**IN THE U.S. DISTRICT COURT OF MARYLAND**
**FOR DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Kristofer Prusin, | * | |
| **Plaintiff** | * | |
| v. | * | **Case No. JKB-16-0605** |
| Canton's Pearls, LLC, et al., | * | |
| **Defendants** | * | |

_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND RESPONSE IN OPPOSITION TO DEFENDANTS'CROSS-MOTION**

Plaintiff Kristofer Prusin ("Prusin") in this wage and hour litigation brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the tip credit regulation, 29 C.F.R. § 1531.59(b) (the "Regulation"), the Maryland Wage and Hour Law, Md. Ann. Code LE art. 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payments and Collection Law, Md. Ann. Code LE art. 3-501, *et seq.* ("MWHL"), files this Motion for Partial Summary Judgment (the "Motion") against Defendants Canton's Pearl, LLC ("Canton Dockside"), and Eric Hamilton ("Hamilton"), and Response in Opposition to Defendants' Cross-Motion for Partial Summary Judgment (ECF Doc. 27), and states:

**I.       Case Background/Introduction**

Defendants operated "Canton Dockside," a well-known crab house and restaurant in the Canton neighborhood of Baltimore City, Maryland for approximately twelve years beginning in 2004.   Plaintiff has asserted claims against the Defendants for failure to pay: (i) statutory minimum wages to the Plaintiff in violation of the FLSA and MWHL, including Defendants' failure to comply with the tip credit requirements; (ii) overtime compensation to Plaintiff in violation of the FLSA and MWHL; and (iii) earned wages in violation of the MWPCL.  (ECF

Doc. 1, Complaint).

The grounds for this Motion for Partial Summary Judgment are as follows:

1. Canton Dockside failed to give the Plaintiff the requisite notification under 29 U.S.C. §203(m) ("Section 203(m)"), and the Regulation to be eligible to take tip credits;

2. Canton Dockside's belated assertion that its mandatory gratuities (*i.e.*, service charges) should be counted as wages for FLSA minimum wage purposes is without merit because the service charges were not included in the restaurant's "gross receipts, were not paid concurrently with other wages, nor were the service charges paid as wages with mandatory deductions (*e.g.,* Social Security, Medicare) taken from the service charges;

3. Canton Dockside failed to pay overtime compensation to the Plaintiff for weeks in which he worked more than forty hours per week as a server; and

4. This Motion seeks an award of $19,165.06 in unpaid minimum wage and overtime compensation, plus an equal amount in liquidated damages, and the entry of judgment against Defendants Canton's Pearls, LLC and Eric Hamilton, jointly and severally.

This Motion does not seek treble damages under the MWPCL, Md. Ann. Code LE art. 3-507.1.  *See, e.g.*, Medex v. McCade, 372 Md. 28, 43-44, 811 A.2d 297, 306-77 (2002) ("[w]hether punitive or compensatory in nature, the determination of discretionary damages is quintessentially a matter for the trier of fact, and therefore, the determination of a bona fide dispute and treble damages was for the jury").

Defendants have filed a Cross-Motion for Partial Summary Judgement asserting that Plaintiff may only pursue his FLSA claims covered by the two year period of limitations, because the three year statute of limitations is only available to claims arising "out of a willful

violation" of the FLSA.  (ECF Doc. 27).  Defendants argue that their FLSA violations were not willful because they "assumed" Plaintiff's pay structure mirrored the pay structure for wait staff in the restaurant industry based upon their previous work experience at Seaside Restaurant. However, a genuine dispute of material fact exists because a reasonable factfinder could disbelieve their proffered explanation based on compelling evidence that Defendant Eric Hamilton and Timothy Mitchell, who co-managed Canton Dockside, have misrepresented the lack of FLSA compliance at their prior restaurant employer and find that they were actively engaged in willful FLSA violations.  Moreover, Plaintiff's minimum wage claims under the MWHL are governed by Maryland's general three-year statute of limitations.  Md. Ann. Code, Cts. & Jud. Proc. § 5-101.

## II.    Statement of Undisputed Material Facts As To the Issues Covered By the Motion

Plaintiff sets forth below the undisputed material facts pertinent to this Motion:

1.  The lawsuit was filed by the Plaintiff on March 3, 2016.

2.  Plaintiff was employed by Canton Dockside as a server from April, 2013 to October, 2015, but previously worked in the kitchen as a cook beginning in 2011.  (Exh. 1, Prusin Affidavit, ¶ 1).

3.  The job duties of the Plaintiff rendered him non-exempt from the minimum wage and overtime wage requirements of the FLSA and MWHL.  (Exh. 2, Responses to First Set of Requests for Admissions, Nos. 5 & 6).

4.  During the relevant period,[1] Canton Dockside was an enterprise covered by the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1). (Exh. 2, Responses to First Set of Requests for Admissions, Nos. 3 & 4).

---

[1]  For purposes of this Motion, the relevant period runs from March 3, 2013, three years before this lawsuit was filed until Plaintiff's last day of employment at Canton Dockside in October, 2015.

5.  Plaintiff was paid an hourly wage of $3.63/hour, which is less than the full minimum wage required under the FLSA or the MWHL.

6.  Servers were told that they are paid $3.63 an hour, plus whatever tips they make, and how the bussers and bartenders are tipped-out at the end of the night, but were not told anything about the tip credit.  (Exh. 3, 30(b)(6) Depos., 8/16/16, pgs. 39-45).[2]  Canton Dockside never told Plaintiff that it was taking a tip credit, the exact amount of the tip credit or that he was entitled to keep all of his tips.  (Id.).  Throughout Plaintiff's employment, Canton Dockside management used the term tips to refer to both voluntary tips and service charges interchangeably.  (Exh. 4, Mitchell Depos., pgs. 7, 13).

7.  Canton Dockside does not have any written policies which discuss the minimum wage, overtime compensation or tip credit.  (Exh. 3, 30(b)(6), 8/16/16, pgs. 8-10).  All new employees are given an orientation checklist which outlines the restaurant's policies, but nothing in these documents talks about minimum wage, overtime compensation or tip credit.  Id.

8.  The only Federal and State Department of Labor Minimum Wage poster which Canton Dockside has produced is dated April, 2016 or the same month in which this lawsuit was filed approximately six months after Plaintiff's last day of employment.  (Exh. 5, Hamilton Depos., pgs. 211-12).

9.  Plaintiff generally preferred not to put a mandatory gratuity (i.e., a service charge) on his checks, because he made more money by using a voluntary tip.  (Exh. 1, ¶ 4).  Servers were paid 100% of their service charges and voluntary tips in cash at the end of each shift, regardless of whether the customer paid by cash or credit card.  (Exh. 4, Mitchell Depos., pg. 11-14).  The tip-outs for bussers and bartenders were paid out of both the service charges and voluntary tips.

---

[2]  Servers are only told how the tips are broken down at the end of the evening, i.e., they give thirteen percent of their tips to the bussers, and five percent of their beer, wine and liquor sales to the bartenders, and that they keep the rest.  They are not told anything else.  (Id.).

Id.  Servers were also charged an administrative fee (which varied from credit card to credit card) for all payments made by credit card.  Id.  There were no differences in how voluntary tips and service charges were paid to the servers, or how they were treated for accounting purposes. (Id.; Exh. 6, 30(b)(6), 4/27/17, pg. 125).

10.  Service charges and tips were both reported as employee income for federal and state tax purposes.  (Exh. 4, Mitchell Depos., pg. 12-13).  However, the wages which servers were paid in their paychecks consisted entirely of their hourly wages.  As a result, the hourly rate which servers were paid in their paychecks was frequently insufficient to cover all of the payroll taxes.  It was not uncommon for servers to have insufficient wages to cover the required payroll taxes in pay period after pay period.  (Id. at 19-20).  There were many payroll periods in which Plaintiff's paychecks had insufficient funds available to pay the required payroll withholding taxes during relevant period.  (Exh. 7, Heiserman Decl., ¶ 6; Exh. 7-C).   These shortfalls are indicated by an asterisk on the payroll journal reports.  Id.  Mr. Mitchell saw the payroll journal reports, and was well aware of the unpaid payroll taxes pay period after pay period.   (Exh. 4, Mitchell Depos., pg. 19-20).

11.  It is not mathematically possible for Defendants to have included service charges in their gross receipts because the net sales and service charges would have exceeded the gross receipts/sales on their IRS Form 1065 by more than: (i) $485,000 in 2013, (ii) $530,000 in 2014, and (iii) $540,000 in 2015.  (Exh. 7, Heiserman Decl., ¶¶ 2-4).

12.  Defendants' Profit & Loss statements for 2013, 2014 and 2015 ("P&L statements") were generated by the Quickbooks program.  (Exh. 6, 30(b)(6), 5/27/17, pgs. 115-121; Exh. 7-B).  Except for lottery fees and supplier rebates, the different sales categories are taken from the Daily System Sales reports ("DSSD reports") and imputed into Quickbooks which aggregated

the daily sales to generate the P&L statements.  Id.  The numbers reflected in tip clearing, *i.e.*, $8,076.23 in 2013, $8,577.29 in 2014, and $7,592.42 in 2015, reflect the administrative fees charged for voluntary tips and service charges which were paid by credit card.  (Id. at 134; Exh. 7-B).  The administrative fees were never paid to the servers.  Id.  There are no service charges or voluntary tips included in either the Income side or the Expense side of the P&L statements. (Exh. 7, Heiserman Decl., ¶ 5).

13.  Canton Dockside did not include the service charges in its gross receipts in 2013, 2014 and 2014.  (Exh. 7, Heiserman Decl., ¶ 7).

14.  Plaintiff Prusin was never paid any type of overtime compensation during his employment as a server, even though he regularly worked more than forty hours per week.  (Exh. 1, ¶ 3).  According to the employee time card detail reports maintained in the Defendants' micros system, Plaintiff worked 298.42 hours of overtime during the relevant period.  (Exh. 1; Exh. 1-A).

15.  Canton Dockside has not paid overtime compensation to any tipped employees since the restaurant opened in July of 2004.  (Exh. 3, 30(b)(6) Depos., pgs. 13, 15-16).  This policy was uniformly applied to servers, bartenders and busers.  Id.  Tipped employees were allowed to pick up extra shifts or work double shifts which would result in them working more than forty hours per week.  (Id., pgs. 157-58).

16.  Plaintiff's expert witness, Mike Kimel, Ph.D., used the Defendants' hour of work and payroll in order to calculate the Plaintiffs' unpaid wages.  (Exh. 1, Prusin Affidavit, ¶ 3; Exh. 1-A).  During the relevant period, Defendants failed to pay Plaintiff $16,713.04 in required minimum wages, and $2,452.02 in overtime compensation.  Id.

17.   Defendant Eric Hamilton has been a part-owner and member of Canton's Pearls LLC since 2004, and was the General Manager of Canton Dockside from 2004 up until his resignation in May, 2015.  (Exh. 5, Hamilton Depos., pgs. 10, 42;  Exh 8 Dr. Earl Hamilton Depos., pgs. 10, 18 & 21).  Canton Dockside was co-managed by Eric Hamilton and Timothy Mitchell, who both had the authority to hire and fire employees, and had authority to set and adjust and adjust employee compensation, including their own.  (Ex.5, Hamilton Depos., pg. 10, 42, 49-50; Exh. 8, Dr. Earl Hamilton Depos., pgs.10, 25; Exh. 3, Mitchell Depos. 15-16, 18).  Defendant Eric Hamilton was an employer within the meaning of Section 203(d) of the FLSA, 29 U.S.C. §203(d), and therefore is individually liable to the Plaintiff for violating the FLSA and the Regulation.

### III.   <u>Standard of Review</u>

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.' " <u>Rossignol et al. v. Voorhar, et al.</u>, 316 F.3d 516, 523 (4th Cir. 2003) (*quoting* <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 62 n.4 (1st Cir. 1997) (citation and internal punctuation omitted).  "When considering each individual motion, the court must take care to "resolve all factual disputes and any competing rational inferences in the light most favorable' to the party opposing that motion." <u>Id</u>.  (*quoting* <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996).

" '[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact under the theory  he is advancing, but he does thereby so concede no issues remain in the event his adversary's theory is adopted.' "  <u>Teksystems, Inc. v. </u>Bolton, 2010 WL 447782, *4 (D. Md. Feb. 4, 2010) (*quoting* <u>Nafco Oil & Gas, Inc. v. Appleman</u>, 380 F.2d 323, 325 (10th Cir.

1967) (alteration in original)).   There may always be a basic disagreement over what facts are material.   However, when cross motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, the motions "'may be probative of the non-existence of a factual dispute.'"   Teksystems, supra, (*quoting*, Shook v. United States, 713 F. 2d 662, 665).

To effectuate the goals of the [Federal Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA")], courts construe coverage under the FLSA 'liberally to apply to the farthest reaches consistent with congressional direction.'"   Shaliehsabou v. Hebrew Home of Greater Washington, Inc., 363 F.3d 299, 305 (4th Cir. 2004).   Congress's goal in enacting the FLSA was "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of minimum standards of living necessary for health, efficiency and general well-being of workers.' "   Barrantine v. Arkansas-Rest Freight System, Inc., 450 U.S. 728,739 (1981) (quoting 29 U.S.C. § 202(a)).

## IV.   Argument

### A.  General Statement of Relevant Law

1.   Tip Credit Notification Requirements.   Section 203(m) of the FLSA allows an employer to pay a sub-minimum wage to its tipped employees provided that the employer complies with the notification requirements of that Section.   29 U.S.C. § 203(m); Gionfriddo v. Jason Zink, LLC, 769 F. Supp. 2d 880, 893 (D. Md. 2011) ("Tipped employees … are required to receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement."). Section 203(m) provides that an employer may not take a tip credit with regard to an employee's wages unless (1) "such employee has been informed by the employer of the

provisions of this subsection" and (2) "all tips received by such employee have been retained by the employee, except that the subsection shall not be construed to prohibit the pooling of tips among employees who customarily receive such tips." Dorsey v. TGT Consulting, LLC, 888 F. Supp. 670, 680-81 (D. Md. 2112). These two requirements are "strictly construed, " Copantitla, et al. v. Fiskardo Estiatorio, Inc., et al., 788 F.Supp.2d 253 (S.D.N.Y. 2011) (quoting Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)), and the Fourth Circuit has long done so:

> What Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and *fully inform* your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit.

Richard, et al. v. Marriott Corporation, et al., 549 F.2d 303, 305 (4th Cir. 1977) (italics added).

In Martin v. Tango's Restaurant, Inc., 969 F.2d 1319 (1st Cir. 1992), the Court of Appeals, in reversing the district court's finding that the restaurant-employer had satisfied its notice obligation under Section 203(m) of the FLSA, reasoned in relevant part as follows:

> A stranger to the FLSA might suppose that, in determining an employer's minimum wage obligations, the tips regularly received and retained by an employee either would be treated as wages paid by the employer or, in the alternative, would be wholly ignored. Instead, in a legislative compromise, Congress chose to allow employers a partial tip credit if, but only if, certain conditions are met. At the time of the employment in this case, section 3(m) of the Act provided that in computing minimum wages the employer could treat as wages paid by the employer tips actually received by the employee up to "an amount determined by the employer but not ... in excess of 40 per centum of the applicable minimum wage." *See* 29 U.S.C. § 203(m) (1982).

\* \* \* \*

Section 3(m) requires as a condition of the tip credit that the employee be informed by the employer "of the provisions of this subsection...." The core provisions of section 3(m) allow an employer to take a tip credit against the employer's minimum wage obligations, in an amount to be determined by the employer, subject to certain limitations. We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. It could easily be read to require more—for example, notice of "the amount ... determined by the employer" to constitute wages—but how much more need not be decided in this case.

\* \* \* \*

It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement.

Id. at 1322-1323 (citations omitted).

Effective May 5, 2011, the Regulation was implemented by the U.S. Department of Labor ("DOL"), setting forth all the specific matters as to which an employer had to notify its tipped employees *in advance* to be eligible to take tip credits.  The Regulation reads as follows:

(a)  In  determining  compliance  with  the  wage  payment requirements of the Act, under the provisions of section 3(m) the amount paid to a tipped employee by an employer is increased on account of tips by an amount equal to the formula set forth in the statute (minimum wage required by section 6(a) (1) of the Act minus  $2.13),  provided  that  the  employer  satisfies  all  the requirements of section 3(m). This tip credit is in addition to any credit for board, lodging, or other facilities which may be allowable under section 3(m).

(b) As indicated in § 531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee." Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of

the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. The credit allowed on account of tips may be less than that permitted by statute (minimum wage required by section 6(a) (1) minus $2.13); it cannot be more. In order for the employer to claim the maximum tip credit, the employer must demonstrate that the employee received at least that amount in actual tips. If the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance so that the employee receives at least the minimum wage with the defined combination of wages and tips. With the exception of tips contributed to a valid tip pool as described in § 531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.

The Regulation was challenged by the National Restaurant Association and others in a case captioned National Restaurant Association (the "Restaurant Association"), et al. v. Soles, 870 F.Supp.2d 42 (D.D.C. 2012). The Restaurant Association asserted that the Regulation violated the Administrative Procedure Act, ("APA"), 5 U.S.C. §§611, 702, on various grounds. After the parties filed cross-motions for summary judgment, the District Court granted the Secretary of Labor's cross-motion concluding, among other things, that the Regulation was not arbitrary or capricious or not in accordance with law. In so ruling, the District Court accepted the DOL's contention that "the five disclosures required by the final rule are derived directly from the statutory text of section 3(m)." Id. at 55. To demonstrate the point, the District Court set out a side-by-side comparison of Section 203(m) and the Regulation as follows:

| 29 U.S.C. § 203(m) | 29 CFR § 531.59 |
|---|---|
| "In determining the wage an employer is required to pay | "[A]n employer is not eligible to take the tip credit |

| | |
|---|---|
| a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to— | unless it has informed its tipped employees in advance of the employer's use of the tip credit provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer;" |
| (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996;" | "the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employee[]" |
| "(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title." | "which amount may not exceed the value of the tips actually received by the employee[ ]" |
| "The preceding [two] sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection," | "and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section[.]" |
| "and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." | "that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips[.]" |

The applicability of the Regulation was an issue in <u>Dorsey v. TGT Consulting, LLC, et al.</u>, 888 F.Supp.2d 670 (D. Md. 2012). In that case, unlike this one, all of the events giving rise to plaintiffs' causes of action under the FLSA occurred before the Regulation became effective on May 5, 2011. The Court there initially discussed the Regulation as follows:

> Although the notice requirements of section 203(m) were enacted in 1974, the Department of Labor did not promulgate a final regulation implementing the statutory requirement until May 5, 2011. The new rule, codified at 29 C.F.R. § 531.59(b), includes a more detailed notice requirement than courts had previously mandated. In relevant part, the new regulation states that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance ... that all tips received by the tipped employee must be retained by the employee...." 29 C.F.R. § 531.59(b). Thus, under the new regulation, it is not sufficient that employers "allow the employee to retain all tips he or she

received." <u>Arencibia</u>, 831 F.Supp.2d at 175. Rather, employers must also *inform* employees of the requirement that they must be allowed to retain all of the tips. As discussed below, the parties disagree as to whether this regulation applies retroactively in this case. (Emphasis in original).

<u>Id</u>. at 681-682.   In <u>Dorsey</u>, Judge Blake did not apply the Regulation retroactively because it was not a clarifying regulation.  <u>Id</u>. at 683-684.

The case law is clear that the burden of proof is on an employer to show that it is eligible to take tip credits.  *See, e.g.*, <u>Mitchell v. U.S. Airways, Inc.</u>, 858 F.Supp.2d 137, 160 (D. Mass. 2012); <u>Driver v. Apple Illinois, LLC</u>, 265 F.R.D. 293, 298 (N.D. Ill. 2010), where the Court said as follows:

[Section 203(m)]makes clear the intent of Congress to place *on the employer* the burden of proving … the amount of tip credit, if any, which the employer may claim … [The employer is responsible for ascertaining that the [minimum wage] provisions are complied with in compensating 'tipped employees.'

<u>Id</u>. at 160 (citing U.S. Dep't. of Labor, Field Operations Handbook § 30d00(b) (Rev. 563) (Dec. 9, 1988)) (Emphasis in original).

2.   <u>Service Charges</u>. For purposes of the FLSA, a "service charge" is a "compulsory charge for service . . . imposed on a customer by an employer's establishment."  29 C.F.R. § 531.55(a).  However, as the Fourth Circuit recently observed:

There are at least two prerequisites to counting "service charges" as an offset to an employer's minimum-wage liability. The service charge must have been included in the establishment's gross receipts," <u>Hart</u>, 967 F.Supp.2d at 929, and it must have been "distributed by the employer to its employees," 29 C.F.R. § 531.55(b).   These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so. <u>See</u>, <u>Hart</u>, 967 F.Supp.2d at 930.

 <u>McFeeley et al. v. Jackson Street Entertainment, LLC</u>, 825 F.3d 235, 246  (4th Cir. 2016)

(citing <u>Reich v. ABC/York-Estes Corp.</u>, 1997 WL 264379, *4-5 (N.D. Ill. May 9, 1997); <u>see also</u>

Hart et al. v. Rick's Cabaret Int'l, Inc., et al., 60 F.Supp.3d 447, 455 (S.D.N.Y. 2014) (observing that "for such a charge to constitute a service charge that may be applied against an establishment's FLSA minimum-wage duty, the establishment must have included this charge in its gross receipts[,]" and "this bright-line requirement of inclusion in gross receipts serves important goals. It advances the FLSA's goal of assuring that the employee is paid, and with mandatory deductions (*e.g.,* Social Security, Medicare) taken from the employee's wages. By contrast, permitting an employer's FLSA minimum-wage obligation to be satisfied by payments not included in gross receipts but shown only later (*e.g.,* in litigation) to have been made to a worker by customers would diminish these protections and invite 'intolerable problems of proof.' ")

**B.    Plaintiff is Entitled to Partial Summary Judgement Against the Restaurant for Its Failure to Comply With the Notification Obligations Under Section 203(m) and the Regulation**

In addition to failing to satisfy the tip credit notification requirements, it does not appear that Canton Dockside management had any understanding of the tip credit.   During the initial corporate designee deposition, Timothy Mitchell, the long-time manager of Canton Dockside, testified on its behalf, as follows:

Q.    So what were tipped employees, busers, bartenders, servers told about the tip credit?

A.    Well, they are explained when they are first hired exactly how they are tipped out at the end of the evening.

Q.    Slow down.  So when they are first hired, who tells them?

A.    Well the manager, whoever the on-duty manager would tell them and then their last day of training they are to follow the server to the end of the shift, so they can see exactly how the tip out procedures are done at the end of the evening.

Q.      So during their training, a new server would be told how the tip out works, and in shadowing a senior server, would go through that process to learn how to do it correctly, right?

A.      Correct.

Q.      What else are they told?

A.      That is pretty much it.  They are explained how if you made two hundred dollars tonight, this is why you are walking out with this much money because thirteen percent goes to the busers and five percent of your beer, wine and liquor sales goes to the bar.

                                        ***

Q.      Okay.  Who told them about the minimum wage?

A.      When they are hired, initially, it is, you know, usually one of the first questions, what is our rate of pay.  They are explained that servers are paid $3.63 an hour, plus whatever tips you make.

Q.      Plus tips, are they told anything else?

A.      How the tips are broken down at the end of the evening to the busers and bartenders.

Q.      Nothing else?

A.      No.

Q.      There is no formal policy that they have to be told the amount of the tip credit?

A.      Well, they are informed of the percentages of the thirteen percent of the tips that go to the buser and the five percent of the beer, wine and all liquor sales that goes to the bar.

Q.      Okay.  By tip credit, I mean the amount, the difference between - - do you know what the term tip credit means?

A.      Not necessarily.  Are we talking about the tip out, the amount they are tipping out to the busers?

Q.      I am not talking about the tip out.  I am talking about the tip credit?  Do you know what the tip credit is?

A.      So the difference in the minimum wage?

Q.     The amount of the tip credit is the difference between the applicable minimum wage and the $3.63 an hour they are receiving.  That is called the tip credit.

A.     Okay.

***

Q.     Have you ever sat down and told a tipped employee anything about the tip credit, other than what you have already told me?

A.     No.

Q.      Have you ever instructed a front of the house manager about what information has to be given to tipped employees?

A.     I have instructed other managers to - - like I have explained, they make $3.63 an hour - -

Q.     Plus tips - -

A.     Plus – what they tipped out to the busser and the bar.

Q.     Less what they tip out?

A.     Correct.

Q.     And sitting here today, do you have any personal knowledge about what the Plaintiff, Kristofer Prusin, was told when he became a server?

A.     Well, I mean that he went from being in the kitchen to working as a buser.  I know that when he transitioned from the kitchen to a buser, it was explained to him how busers get paid five dollars an hour, and of course he was curious as to how else he made money, how servers tipped him out,  It was explained that the servers tip you out thirteen percent of their gross tips and then when he became a server, he was explained how he is tipped out as server.

Q.     Did you do that, personally?

A.     I did not do that personally.

Q.     Were you present when it happened?

A.     Not that I recall.

***

16

Q.     Have you ever instructed a front of the house manager to tell tipped employees
that they are entitled to retain all of their tips except pursuant to a valid tip pool
arrangement.

A.     No.

(Exh.3, 30(b)(6), 8/16/16, pgs. 38-45).   It is, therefore, clear that Canton Dockside
cannot satisfy its burden of proving that it informed Plaintiff in advance of the employer's use of
the tip credit provisions of section 3(m) of the Act, the amount of the tip credit which may not
exceed the value of the tips actually received by the employee, or that all tips received by tipped
employees must be retained by the employee except in a valid tip pooling arrangement.   29
C.F.R. § 531.59.

As to the poster allegedly placed in the restaurant,[3] Defendants have failed to produce a
copy of the actual poster which was allegedly posted during the term of Plaintiff's employment.
But this dispute is largely immaterial, because a generic government poster cannot satisfy the tip
credit provisions of the FLSA and MWHL, because it simply does not convey all of the
information that is required by 29 C.F.R. § 531.59(b).[4]   Accordingly, the weight of authority has
examined the precise issue has held that the language of a U.S. Department of Labor poster is not
sufficient to establish that the employer communicated its intent to take a tip credit.   See , e.g.,
Hernandez v. Jrpac, Inc., 2016 WL 3248413, *24 (S.D.N.Y. June 6, 2016) (rejecting same
defense as proffered by Defendants here; observing that "even had a DOL poster been
prominently displayed in the workplace, Spice Symphony's notification to the delivery workers
merely that they would earn certain wages plus tips, without more, would not satisfy the FLSA's
notice provision for taking a tip credit"); Salinas et al. v. Starjem Rest. Corp., 123 F.Supp.3d

---

[3]   The only poster which Defendants have produced is dated the same month in which this lawsuit was
filed approximately six months after Plaintiff's last day of work.   (Exh. 5, Hamilton Depos., pgs. 211-12).

[4]   For example, the Department of Labor's poster does not advise employees that they have the right to
retain their tips.

442, 467 (S.D.N.Y. 2015) (rejecting notion that government posters satisfied employer's tip credit notice obligations); <u>Driver v. Apple Illinois, Inc.</u>, 917 F.Supp.2d 793 (N.D. Ill. 2013) (denying employer's motion for summary judgment that the U.S. DOL and Illinois wage/hour poster satisfies the "inform" requirements of 29 U..S.C. § 203(m)); <u>Perez et al. v. G & P Auto Wash, Inc.</u>, 930 F.Supp.2d 423, 435-36 (E.D.N.Y. 2013) rejecting argument that government posters satisfied employer's tip credit notice obligations, and further observing that Defendants "have not submitted any evidence from anyone with personal knowledge as to where and when these posters were displayed and, thus, the Court cannot determine whether these posters were prominent and visible, and whether they were, in fact, displayed during plaintiffs' tenure of employment"); <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F.Supp.2d 253, 289-90 & n. 15 (S.D.N.Y. 2011) ("A generic government poster could inform employees that minimum wage obligations exist, but could not possibly inform employees that their employers intend to take the tip credit with respect to their salary.")

Because of its failure to produce a copy of any poster actually posted during Plaintiff's employment, despite requests therefor, Plaintiff submits that the Defendants have not provided proof that a government poster was even posted.  Accordingly, any such argument by Defendants now is too little and too late.  Furthermore, under <u>Driver</u> and cases cited therein, generic posters will not satisfy the Defendants' obligations under Section 203(m).  Thus, Canton Dockside cannot carry its burden of proof on the tip credit issue.  Simply put, without anything more, Canton Dockside's defense on the tip credit claim does not create a genuine dispute of material fact.  Thus, as in <u>Copantitla</u>, summary judgment should be granted to the Plaintiff on the tip credit claims.

**C.      Defendants May Not Count Service Charges as FLSA Wages.**

Defendants first claimed that service charges should be counted as FLSA minimum wages more than six months after the lawsuit was filed.  Mr. Mitchell testified that the basis for his belief that Canton Dockside was paying its servers the minimum wage correctly had nothing to do with its use of mandatory gratuities or service charges.  (Exh. 4, Mitchell Depos., Pgs. 33-35).   In fact, Canton Dockside treated the service charges like voluntary tips.  Its management used the term "tips" to refer to both voluntary tips and service charges interchangeably, and there were no differences in how voluntary tips and service charges were paid to the servers, or how they were treated for accounting purposes.  (Exh. 4, pgs. 11-14; Exh. 6, 30(b)(6), 4/27/17, pg. 125).

The "regulations implementing the FLSA provide for narrow, defined circumstances under which a 'compulsory charge for service … imposed on a customer by an employer's establishment,' 29 CFR § 531.55(a), and distributed by an employer to its employees, 'may be used by the employer to satisfy the monetary requirements of the Act.'  29 CFR § 531.55(b)." Hart et al. v. Rick's Cabaret Int'l, Inc., et al., 60 F.Supp.3d 447, 455 (S.D.N.Y. 2014).  As the Fourth Circuit recently observed:

> There are at least two prerequisites to counting "service charges" as an offset to an employer's minimum-wage liability. The service charge must have been included in the establishment's gross receipts," Hart, 967 F.Supp.2d at 929, and it must have been "distributed by the employer to its employees," 29 C.F.R. § 531.55(b).   These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so. See, Hart, 967 F.Supp.2d at 930.

 McFeeley et al. v. Jackson Street Entertainment, LLC, 825 F.3d 235, 246  (4th Cir. 2016)

(citing Reich v. ABC/York-Estes Corp., 1997 WL 264379, *4-5 (N.D. Ill. May 9, 1997); see also Hart, 60 F.Supp.3d at (S.D.N.Y. 2014) (observing that "for such a charge to constitute a service

charge that may be applied against an establishment's FLSA minimum-wage duty, the establishment must have included this charge in its gross receipts[,]" and "this bright-line requirement of inclusion in gross receipts serves important goals. It advances the FLSA's goal of assuring that the employee is paid, and with mandatory deductions (*e.g.,* Social Security, Medicare) taken from the employee's wages. By contrast, permitting an employer's FLSA minimum-wage obligation to be satisfied by payments not included in gross receipts but shown only later (*e.g.,* in litigation) to have been made to a worker by customers would diminish these protections and invite 'intolerable problems of proof.' ").

Despite their desperate attempt to assert an after the fact defense, Defendants have failed to comply with any of the prerequisites to counting service charges as an offset to their minimum-wage liability.  It is undisputed that servers were paid 100% of their service charges and voluntary tips in cash at the end of each shift, regardless of whether the customer paid by cash or credit card, and the wages which servers were paid in their paychecks consisted entirely of their hourly wages.  (Exh. 4, Mitchell Depos., pgs. 11-14).  As a result, the hourly rate which servers received in their paychecks was frequently insufficient to cover all of the payroll taxes, and the shortages would occur pay period after pay period.  (Id. at 19-20, 22).  The payroll journal reports demonstrate that Plaintiff's paychecks frequently had insufficient funds available to pay the required payroll withholding taxes during relevant period.  (Exh. 7, Heiserman Decl., ¶ 6; Exh. 7-C).   These payroll journal reports were reviewed by Canton Dockside's managers, who were aware of the unpaid payroll taxes pay period after pay period.   (Exh. 4, Mitchell Depos., pgs. 19-20).

One of the central purposes of the bright-line requirement of inclusion in gross receipts is to ensure that employees – like Prusin – - are paid, and mandatory deductions for payroll taxes

taken from their wages.  <u>Hart</u>, 60 F.Supp.3d at 455.  In other words, they are in all respects indistinguishable for actual wages.  Canton Dockside could have easily ensured that Plaintiff's wages were sufficient to pay the required payroll taxes by including the service charges in his paycheck.  It did not do so.

Similarly, Canton Dockside did not include the service charges in its gross receipts in 2013, 2014 and 2014.  (Exh. 7, Heiserman Decl., ¶ 7).  For example, no service charges or voluntary tips are included in either the Income side or the Expense side of the P&L statements for 2013, 2014 or 2015.  (<u>Id</u>., ¶ 5).  The numbers reflected in tip clearing, *i.e.*, $8,076.23 in 2013, $8,577.29 in 2014, and $7,592.42 in 2015, reflect the administrative fees charged for voluntary tips and service charges which were paid by credit card.  (Exh. 6, 30(b)(6), 4/27/17, pg. 134; Exh. 7-B).  These administrative fees were not service charges because they were kept by Canton Dockside instead of being "distributed by an employer to its employees."  29 CFR § 531.55(b). Indeed, it is not mathematically possible for Defendants to have included service charges in their gross receipts because the net sales (*i.e.,* food and drink) and service charges would have exceeded the gross receipts/sales on their IRS Form 1065 by more than: (i) $485,000 in 2013, (ii) $530,000 in 2014, and (iii) $540,000 in 2015.  (Exh. 7, Heiserman Decl., ¶¶ 2-4).

In short, Canton Dockside has failed to satisfy the "prerequisites to counting 'service charges' as an offset to an employer's minimum-wage liability."  <u>McFeeley et al. v. Jackson Street Entertainment, LLC</u>, 825 F.3d 235, 246  (4th Cir. 2016).  It is, therefore, clear that Plaintiff should be awarded unpaid minimum wages in the amount of $16,713.04.  (Exh. 1-A).

### D.    Plaintiff is Entitled to Partial Summary Judgement Against the Restaurant for Its Failure to Pay Overtime Compensation.

Defendants have admitted that Plaintiff was not exempt from overtime wage requirements of the FLSA and MWHL.  (Exh.2, Responses to First Set of Requests for

Admissions, Nos. 5 & 6).  It is further undisputed that Plaintiff worked 298.42 hours of overtime during the relevant period.  (Exh. 1; Exh. 1-A).  In fact, these overtime hours are reflected in the hour of work records maintained by the Defendants.  Finally, it is undisputed that Canton Dockside never paid overtime compensation to tipped employees – including the Plaintiff – who worked more than forty hours per week.  (Id.; Exh. 3, 30(b)(6), 8/16/16, pgs.13, 15-16).  It is, therefore, clear that Plaintiff should be awarded unpaid overtime compensation in the amount of $2,452.02.  (Exh. 1-A).

> **E.   Plaintiff Is Entitled to an Award of Liquidated Damages under the FLSA.**

The FLSA provides that the employer who violates its minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages*."  29 U.S.C. § 216(b) (emphasis added).  Under the FLSA, there is a presumption in favor of the award of liquidated double damages against employer's who violate the statute.  Lanza v. Sugarland Run Homeowners Assoc., Inc., 97 F. Supp. 2d 737, 739 n. (E.D.Va. 2000).  This Court has long recognized that district courts only have discretion to withhold liquidated damages in certain limited situations:

> To avoid liquidated damages an employer found liable under section 206 or 207 has the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict."  Wright v. Carrigg, 275 F.2d 448, 449 (4th Cir.1960).  This burden is a "difficult one to meet … and [d]ouble damages are the norm, single damages the exception."  Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 71 (2nd Cir. 1997).

> [T]he presumption of willfulness stands, absent positive and compelling proof of good faith.  Knowledge will generally be imputed to the offending employer ….Nor does the complete ignorance of the possible applicability of the [FLSA] shield the employer from liability for liquidated damages …. Good faith requires come duty to investigate potential liability under the FLSA.

Reeves v. Int'l Tel. & Tel. Corp., 616 F.2d 1342 (5th Cir. 1090), *cert. denied*, 449 U.S. 1077, 101 S. Ct. 857, 66 L.Ed. 2d 800 (1981).  'Nor is good faith demonstrated by the absence of complaints on the part of employees, or simple conformity with industry-wide practice." Reich, 121 F.3d at 71.

Rogers v. Savings First Mortgage, LLC, 362 F. Supp. 2d 624, 6367-38 (D.Md. 2005) (Nickerson, J.).

In the instant case, Defendants admit that they did not consult any lawyers, human resources professionals or trade associations with respect to their FLSA or MWHL compliance issues, nor did they conduct any investigation with respect to their obligations under these laws. (Exh. 3, 30(b)(6), 8/16/16, pgs. 16-18).  While Defendants have testified they "assumed" that Plaintiff's pay structure mirrored the industry standard based on their previous experience at another restaurant,[5] Defendants cannot satisfy their heavy burden by incorrectly claiming their pay structure conformed to a fictional industry-wide practice or complaining about the absence of employee complaints.  Reich, 121 F.3d at 71.  As set forth above, the Courts have consistently held that ignorance of the FLSA's requirements is not a defense to liquidated damages.  Reeves, 616 F.2d at 1342 (5th Cir. 1090), *cert. denied*, 449 U.S. 1077 (1981).

Wherefore, Plaintiff requests an award of $38,330.12, *i.e.*, $19,165.06 in unpaid statutory minimum wages and overtime compensation, plus an equal amount in liquidated damages.

### F.    Defendant Hamilton is an Employer Under the FLSA and MWHL.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee. … "  29 U.S.C. § 203(d).  The FLSA

---

[5]  Hamilton and Mitchell had previously worked at Seaside  Restaurant for six or seven years.  (Exh. 3, pgs. 7-8; Exh. 5, pg. 66).   However, Edward Snyder and Vernon Martin, who own and ran that restaurant, have testified that Seaside Restaurant did pay overtime to servers during the tenure of Hamilton's and Mitchell's employment and that their testimony was incorrect. (Exh. 9, Snyder Depos., pgs. 11-13 and 16; Exh. 10. Martin Depos. pgs. 10-11).

contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA. Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir.1989) (per curiam); see also Quinteros v. Sparkle Cleaning, Inc., 523 F. Supp.2d 762, 768 (D. Md. 2008) (Williams, J.). "In determining whether a party is an employer, "economic reality" controls rather than common law concepts of agency." Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991). The guiding principal is that the term "employer" under the FLSA is to be interpreted expansively. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).

An individual who effectively dominates an employer's administration or otherwise acts, or has the power to act, on behalf of the corporation with respect to its employees, is deemed to be an employer under the FLSA. Reich v. Circle C. Invest., Inc., et al., 998 F.2d 324, 329 (5th Cir. 1993). An individual need not be an officer in order to exercise control over the workplace sufficient to find FLSA employer status. Id. However, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Donovan v. Agnew, et al., 712 F.2d 1509, 1511 (1st Cir. 1983) (cited with approval by Brock v. Hamad, 867 F.2d 804, 809 n.6 (4th Cir. 1989)). Personal liability has been found even against a corporate officer who lacks an ownership interest in the corporation, or who has minimal ownership interests. Id.; see also Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986) (an individual need not have an ownership interest to be considered an FLSA employer). Rather, the individual must "either be involved in the day-to-day operation or have some direct

responsibility for the supervision of the employee" in order to be considered an "employer." Patel, *supra*, at 638. "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Security Serv. Ltd., et al., 172 F.3d 132, 139 (2nd Cir. 1999) (citations omitted). Any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. Id. Employer status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. *Id*.

In Roman v. Guapos III, Inc., 970 F.Supp.2d 407 (D. Md. 2013) (Chasanow, J), the Court denied in part the restaurant-defendants' motion to dismiss the wait staff's collective action brought under the FLSA and MWHL. It found that the complaint stated claims that the restaurant owner and his son were individually liable for the alleged violations of those laws, relying on facts which parallel Tony V.'s testimony in this case. In *Roman,* Judge Chasanow, in denying defendants' motion on the individual liability issue, summarized the applicable law in relevant part as follows:

> It is well settled that an individual may qualify as an employer and face liability under the FLSA. In Falk v. Brennan, the Supreme Court found that an individual qualified as an "employer" under the FLSA because the defendant had extensive managerial responsibilities and "substantial control of the terms and conditions of the work of [plaintiff] employees." 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); *see also* Brock v. Hamad, 867 F.2d 804, 808 n. 6 (4th Cir.1989) (finding a manager was liable for FLSA violations as an "employer" because "he hired and directed the employees who worked for the enterprise."); Pearson v. Prof'l 50 States Protection, LLC, No. RDB–09–3232, 2010 WL 4225533, at *4 (D.Md. Oct. 26, 2010) (collecting cases). As in the corporate employer context, "courts generally look at the 'economic reality' of an individual's status in the workplace before determining liability." Gionfriddo v. Jason Zink, LLC, 769 F.Supp.2d 880, 890 (D.Md.2011) (*citing* Schultz, 466 F.3d at 304; Goldberg v.

Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)). This "economic reality" includes a number of factors, "such as the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." Gionfriddo, 769 F.Supp.2d at 890 (citing Baystate Alt. Staffing v. Herman, 163 F.3d 668, 675 (1st Cir.1998)).

Courts in this district have also applied the Bonnette factors to determine whether an individual constitutes an "employer." *See* Iraheta v. Lam Yuen, LLC, No. DKC–12–1426, 2012 WL 5995689, at *3 (D.Md. Nov. 29, 2012); *Khalil,* 2011 WL 231793, at *2. No single factor is dispositive; rather, the totality of the circumstances must be considered. *See, e.g.,* Speert v. Proficio Mortg. Ventures, LLC, No. JKB–10–718, 2011 WL 2417133, at *3 (D.Md. June 11, 2011). "An individual's status as a high-level corporate shareholder or officer does not automatically impart 'employer' liability to that individual, as individual liability 'is dictated by the economic reality of the employment relationship.' " *Caseres,* 2012 WL 5250561, at *3 (quoting *Pearson,* 2010 WL 4225533, at *4).

Id. at 416-417.

Here, from the deposition testimony of Eric Hamilton (Exh. 5), the corporate designee (Exh. 3) and Dr. Earl Hamilton (Exh. 8), it is clear that Mr. Hamilton is an owner of Canton Dockside and the long-time General Manager who controlled its overall operations including employee decisions, and had authority to hire and fire employees and to set and adjust employee compensation, including his own.  (Exh.5, Hamilton Depos., pg. 10, 42, 49-50; Exh. 8, Dr. Earl Hamilton Depos., pgs.10, 25; Exh. 3, Mitchell Depos. 15-16, 18).

In Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962 (6th Cir. 1992), the Court of Appeals affirmed the entry of summary judgment against an employer and its president-owner setting forth the pertinent law in part as follows:

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA. Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). "The remedial purposes of

> the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." <u>McLaughlin v. Seafood, Inc.</u>, 867 F.2d 875, 877 (5th Cir.1989) (per curiam). In deciding whether a party is an employer, "economic reality" controls rather than common law concepts of agency. <u>Goldberg v. Whitaker House Cooperative</u>, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

<u>Id</u>. at 965.

Looking to the economic reality of Hamilton's status at Canton Dockside, it is beyond peradventure that he meets all of the factors outlined in <u>Roman</u>. Thus, as a matter of law, this Court must hold that Mr. Hamilton, like Canton Dockside, is personally liable to the Plaintiff for the foregoing violations of the FLSA and MWHL. *See* <u>Roman</u>, supra; <u>Elliott Travel</u>, supra.

## V.    **Defendants' Motion for Partial Summary Judgment Should Be Denied**

The FLSA provides a two-year period of limitations from the date when the cause of action accrued, which is extended to a three-year period of limitations for claims arising "out of a willful violation." 29 U.S.C. § 255(a). For these purposes, and employer acts willfully if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed. 2d 115 (1988).

Prior to opening Canton Dockside, Defendant Eric Hamilton and Timothy Mitchell worked as servers, bartenders and shift managers at Seaside Restaurant ("Seaside") for six or seven years. (Exh. 3, 30(b)(6), 8/16/16, pgs. 7-8; Exh. 5, Hamilton Depos., pgs. 65-66). Messrs. Hamilton and Mitchell left Seaside to begin working at Canton Dockside in June 2004. (<u>Id</u>.).[6] In his 30(b)(6) testimony on behalf of the company, Mitchell testified, as follows:

Q.     And what was the basis for the company's understanding that the law did not

---

[6] Defendant Hamilton and Mitchell were "basically co-running the place," and always worked as equals. (Exh. 5, Hamilton Depos., pg. 42).

require time and a half for work in excess of forty hours per week?

A.      It has been our understanding that has been the industry standard, that you know even from when I was a server at Seaside, tipped employees did not get paid overtime.

(Exh.3, pg 16).[7]  Hamilton and Mitchell claim to have brought in the same the same practices at Canton Dockside that they had used at a prior restaurant, and that they "assumed that Plaintiff's pay structure mirrored the pay structure for wait staff in the restaurant industry." (ECF Doc. 27, ¶ 14; Exh. 5, Hamilton Depos., pg. 126).  In contrast, Edward Snyder and Vernon Martin, who own and run Seaside Restaurant, testified that Seaside did pay overtime to servers during the time Hamilton and Mitchell were employed at Seaside, and that Mitchell's testimony was "incorrect."  (Exh. 9, Snyder Depos., pgs. 11-13 and 16; Exh. 10. Martin Depos. pgs. 10-11).

A material dispute exists between the testimony of Messrs. Snyder and Martin on one hand, and the testimony of the Messrs. Mitchell (both individually and as a corporate designee)) and Hamilton on the other, with respect to whether Seaside Restaurant paid overtime to its tipped employees.  A rational factfinder could conclude that the Defendants' testimony was false.  A jury, under settled evidentiary principles, including the maxim of *falsus in uno, falsus in omnibus* ("false in one thing, false in all"), would be entitled to disregard Defendants' testimony that they "assumed that Plaintiff's pay structure mirrored the pay structure for wait staff in the restaurant industry."  See Black's Law Dictionary, 491 (7th ed. 1999) (describing maxim as "[t]he principle that if jury believes that a witness's testimony on a material issue is intentionally deceitful, the jury may disregard all of that witness's testimony");  *see also* Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 15.06 (5th ed. 2000)  (spelling out time-honored instruction  that "[i]f a person is shown to have knowingly testified falsely concerning any important or material

---

[7]  Mr. Mitchell subsequently testified that he worked overtime as a server at Seaside, but was never paid time and a half.  (Exh. 4, pg. 31).

matter, you obviously have a right to distrust the testimony of such an individual concerning other matters"). Defendants' motion should be denied because a reasonable jury could find that Defendants were knowingly engaged in intentional violations of the FLSA.

Even assuming *arguendo* that Plaintiff's FLSA claims were subject to a two-year limitations period, Plaintiff's minimum wage claims under the MWHHL are governed by Maryland's general three year statute of limitations. Md. Ann. Code, Cts. & Jud. Proc. § 5-101.[8] Accordingly, Plaintiff should still be awarded all of his minimum wages under the MWHL for the entire three year period.

## VI.   Conclusion

Wherefore, Plaintiff respectfully requests that the Court: (i) grant this Motion; (ii) enter judgment in the amount of $38,330.12 (*i.e.*, 2 x $19,165.06) against Defendants Canton's Pearls, LLC and Eric Hamilton, jointly and severally; and (iii) deny Defendants' Cross-Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

_ /s/ (with permission)_             _ /s/ Bradford W. Warbasse_
Howard B. Hoffman, Esq.             Bradford W. Warbasse, Esq.
Federal Bar No. 25965               Federal Bar No. 07304
600 Jefferson Plaza, Ste. 304       401 Washington Avenue, Ste. 200
Rockville, Maryland 20852           Towson, Maryland 21204
(301) 251-3752                      (410) 337-5411

*Counsel for Plaintiff*             *Counsel for Plaintiff*

---

[8]  The MWHLS's overtime requirements for restaurant employers only went into effect on July 1, 2014.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2017, Plaintiff's Motion for Partial Summary Judgment and Response in Opposition to Defendants' Cross-Motion, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

_/s/ Bradford W. Warbasse__
Bradford W. Warbasse