**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| **KRISTOFER PRUSIN** | |
| Plaintiff. | |
| | Case No.  JKB-16-605 |
| vs. | |
| **CANTON'S PEARLS, LLC, et al.** | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS' REPLY TO
PLAINTIFF'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

Canton's Pearls, LLC t/a Canton Dockside ("Canton Dockside") and Eric Hamilton ("Defendant Hamilton") (collectively, "Defendants") oppose Plaintiff's Motion for Partial Summary Judgment [ECF No. 71] and reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment [ECF Nos. 27 & 71], and for good cause state:

## I.  Introduction

Plaintiff is not entitled to judgment as a matter of law because there are genuine disputes of material fact as to each issue he raised in his Motion for Partial Summary Judgment.  First, there is ample evidence showing that Defendants informed Plaintiff, and Plaintiff knew, that he was paid a reduced hourly wage because the tips he earned were credited toward Canton Dockside's wage payment obligations.  Second, the evidence in the record shows that Canton Dockside's policy was to impose a mandatory fifteen percent (15%) service charge on all customers' checks, and that Plaintiff earned significant sums from these service charges.  There is also evidence, from those personally involved in Canton Dockside's accounting and from an accounting expert, that the services charges were included in Canton Dockside's gross receipts,

subject to all proper withholding, and paid back out to Plaintiff.  Plaintiff's expert's contentions to the contrary and the legal conclusions Plaintiff draws from that interpretation, at most, create a factual issue that must be determined by a jury.  Third, because Plaintiff has not shown as a matter of law that any FLSA violation occurred in the first instance, he is not entitled to summary judgment on his claim for liquidated damages.  Moreover, Defendants have presented evidence showing they acted in good faith, so that even if any violation occurred (none did), summary judgment is inappropriate on the issue of the good faith defense to liquidated damages. Finally, there are significant factual issues related to Defendant Hamilton's status as a statutory employer.  This Court cannot, as a matter of law, conclude Defendant Hamilton was an employer under the Court's "economic reality" test.  Therefore, summary judgment is inappropriate on all of the issues identified by Plaintiff.

Conversely, Plaintiff failed to show there is any factual dispute regarding his allegation Defendants acted willfully for purposes of the FLSA statute of limitations.  Plaintiff's assertions were merely conclusory and speculative as to willfulness, and therefore Plaintiff failed to meet his burden to point to evidence in the record showing any factual disputes exist.  Based on the evidence in the record, no reasonable jury could conclude Defendants acted willfully.  Therefore, Defendants are entitled to summary judgment as a matter of law on the issue of willfulness and the statute of limitations should be limited to only two (2) years.

## II.   Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is only appropriate when there is no genuine dispute as to

the facts that are material under the substantive law, such that a reasonable jury could not find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 48 (1986).

On cross-motions for summary judgment, the court rules on each party's motion "on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985) (internal quotation marks and citations omitted).

## III.   Argument

Plaintiff failed to show he is entitled to judgment as a matter of law, as genuine disputes of material fact exist regarding each issue raised in Plaintiff's Motion for Partial Summary Judgment.  Consequently, Plaintiff's Motion should be denied in its entirety.

### A.  Defendants Complied with Notification Requirements.

#### 1.  Applicable Law.[1]

The FLSA sets forth employer obligations for payment to employees, including an employer's obligation to pay a minimum wage to employees.  29 U.S.C. §§ 201-219.  Tipped employees[2] must "receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement."  *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011).  An employer is required to inform an employee of the "tip credit" and that an employee retains all tips received by the employee (subject to a valid tip pooling arrangement).  29 U.S.C. § 203(m); 29 C.F.R. § 531.59.  However, an employer is not required to provide the tip credit notice in any particular form (i.e., in writing, in person, verbally).  *See Pellon v. Bus.*

---

[1] Plaintiff's Motion for Partial Summary Judgment focuses only on tip credit requirements related to Plaintiff's FLSA claims and does not appear to seek summary judgment on Plaintiff's Maryland wage claims.

[2] A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).

*Representation Intern., Inc.*, 528 F. Supp. 2d 1306, 1311-10 (S.D. Fla. 2007) (verbal notice and display of poster concerning tip credit sufficient); *see also Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 677-78 (D. Md. 2012) (Court considered whether wage posters were displayed during the statute of limitations period).

In the case of a summary judgment decision, the United State District Court for the District of Maryland denied a motion for summary judgment regarding whether a restaurant employer provided the tip credit notice to a tipped employee, as there was "a genuine dispute as to whether oral notification took place." *Dorsey*, 888 F. Supp. 2d at 682-83.  In particular, the Court considered that the employer representative's deposition testimony stating that oral notification was given to tipped employees of the tip credit conflicted with the tipped employees' deposition testimony that no such notice was provided. *Id.*

## 2.  Analysis.

There is a genuine dispute as to whether Defendants provided Plaintiff notification of the tip credit.  Although Canton Dockside did not have any written procedures informing Plaintiff of the tip credit, the evidence in the record shows that servers, including Plaintiff, received verbal notification of the tip credit satisfying the notification requirements.  All servers were provided training.  [ECF No. 71-3 pg. 8 (39:11-15)].  *See Exhibit A [Excerpts of Defendant Hamilton Deposition 138:10-139:14, Dec. 23, 2016].*  Defendant Hamilton testified that he trained Plaintiff and provided him information.  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 136:14-137:6].*  Defendant Hamilton also testified he told Plaintiff that Plaintiff would earn tips and service charges.  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 134:21-137:6].*[3]

---

[3] Although Plaintiff relies upon testimony by Timothy Mitchell, Plaintiff overlooks that Mr. Mitchell testified he did not train Plaintiff.  *See Exhibit B [Excerpts of Mitchell Deposition 57:13-59:18, Aug. 16, 2016].*  Thus, Plaintiff's position fails to consider who actually trained him and the deposition testimony creates a genuine dispute as to whether oral notification was provided.  *See Dorsey*, 888 F. Supp. 2d at 682-83.  However, Mr. Mitchell did testify

Servers were also informed of the tip pooling or tip out arrangement with other tipped staff. [ECF No. 71-3 pg. 9 (40:13-20)].

Regarding Plaintiff's assertions related to notification through the display of posters, Defendants contend they obtained labor law posters from Paychex, which provided payroll services to Canton Dockside for the entire period at issue. *See Exhibit B [Excerpts of Mitchell Dep. 46:1-48:21, Aug. 16, 2016]; see Exhibit A [Excerpts of Defendant Hamilton Dep. 39:15-41:20, 211:5-217:18].* Paychex supplied posters were displayed in a main thoroughfare used by all employees and was thus conspicuous to all employees, including servers. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 211:5-217:18]; see Exhibit C [Photograph of Labor Law Poster].*[4] Defendant Hamilton's and Mr. Mitchell's deposition testimony is further evidence that labor law posters were displayed and visible to Canton Dockside's employees.

Whether Canton Dockside provided Plaintiff the tip credit notice is a material fact in this case, as it goes to the crux of the amount of wages that are due to Plaintiff (if any). If Canton Dockside could take a tip credit, Plaintiff was owed substantially less than what he has asserted in this matter. As in *Dorsey*, there exists a genuine issue whether a verbal notification was provided to Plaintiff and if that notification complied with the FLSA's requirements. After presentation of the evidence, a reasonable jury could find that Canton Dockside complied with the notification requirements. Consequently, this Court should deny Plaintiff's request for summary judgment on this issue.

---

regarding general training procedures, including that servers were informed of the minimum wage and the amount of the cash wage they would be paid ($3.63) during their training. [ECF No. 71-3 pg. 9 (40:6-20)].

[4] As of the date of this filing. Defendants have not received a copy of the exhibits from Plaintiff of exhibits used during Defendant Hamilton's deposition. As such, Defendants have attached the document they believe was used as the exhibit.

**B.  Service Charges May Be Counted as Wages Under the FLSA.**

**1.  Applicable Law.**

The Code of Federal Regulations distinguishes between a "tip" and a "service charge."  A "tip" is an amount solely determined by a customer presented to the employee from the customer as is the property of an employee.  29 C.F.R. § 531.52.  As such, an employer may not use "an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted… [such] [a]s a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool." 29 C.F.R. § 531.52.

Conversely, a "service charge" is defined as "[a] compulsory charge for service…imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received..." 29 C.F.R. § 531.55(a).  "[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips."  29 C.F.R. § 531.55(b).  If the employer distributed such sums to employees, the service charges "may be used in their entirety to satisfy the monetary requirements of the [FLSA]."  29 C.F.R. § 531.55(b).  For an employer to include a service charge in employee wages, and/or offset minimum and overtime wage obligations, the "service charge must have been included in the establishment's gross receipts" and "distributed by the employer to the employees."  *McFeeley v. Jackson St. Entm't, LLC*, 825 F. 3d 235, 246 (4th Cir. 2016) (internal citations and quotations omitted).  "Gross receipts" is "[t]he total amount of money or other consideration received by a business taxpayer for goods sold or services performed in a taxable year, before deductions."  *Gross Receipts, Black's Law Dictionary* (10th ed. 2014).

### 2. Analysis.

### i. Canton Dockside Included Service Charges in Gross Receipts.

As stated above, the term "gross receipts" is "[t]he total amount of money or other consideration received by a business taxpayer for goods sold or services performed in a taxable year, before deductions." *Gross Receipts, Black's Law Dictionary* (10th ed. 2014). Neither this definition nor the requirements of *McFeeley* state that gross receipts is limited to the amount appearing in Line 1a of Form 1065 (the tax return) as proposed by Plaintiff. That said, Canton Dockside included the service charges it received from its customers in its gross receipts as such term is generally defined.[5]

Service charges were included as part of Canton's Dockside's gross receipts at the time they were placed into the common cash register (if paid in cash) or directly deposited into Canton Dockside's bank accounts and commingled with other charged payments (if paid in credit). Plaintiff's arguments based on his experts' reports use a non-existent standard that gross receipts can only be the amount appearing in Line 1a of a tax return. Even if this standard applied, it is evident Canton Dockside meticulously accounted for the service charges and included them in Line 1a of Canton's Dockside's tax returns.

Plaintiff deposed William Ottey (Canton Dockside's accountant and tax preparer) on two occasions specifically inquiring about which figures were included in Canton Dockside's gross receipts. Mr. Ottey testified which figures constituted Canton Dockside's gross receipts and were used to calculate the information in Line 1a of Canton Dockside's tax return.[6] *See Exhibit E [Excerpts of William Ottey Dep. 68:4-69:8, Jan. 26, 2017].* Mr. Ottey testified he inserted

---

[5] The term gross receipts is not defined in the FLSA or related federal regulations.
[6] Line 1a of Form 1065 is called "Gross receipts or sales." *See, e.g., Exhibit D [Canton Dockside Tax Return for 2014].* As such, gross receipts and gross sales have been used interchangeably.

information and figures from the Daily System Sales Detail[7] ("DSSD") into Canton Dockside's QuickBooks.  *See Exhibit G [Excerpts of Ottey Deposition 69:4-11, Jan. 26, 2017]; see Exhibit H [Exhibit 3 from Mr. Ottey's Dep. – DSSD dated 1/2/13].*  QuickBooks produced various reports, including Profit & Loss statements ("P&L Statements").  *See Exhibit G [Excerpts of Ottey Dep. 115:14-116:17, Apr. 27, 2017]; see, e.g., Exhibit I [P&L Statement January through December 2014].*  Mr. Ottey testified that the information in the "4050 – Sales" section of the P&L Statements was directly derived from the DSSD.  *See Exhibit G [Excerpts of Ottey Dep. 117:9-18, Apr. 27, 2017]*  For instance, line "4000 – Food" from the P&L Statement was taken directly from adding up the food line item in every DSSD for the year under "102 – Sales Tracking" on the left side.  *See Exhibit G [Excerpts of Ottey Dep. 130:22-131:6, Apr. 27, 2017]*

Of greatest importance, Mr. Ottey testified that the line "Tip Clearing" under section "4050 – Sales" of the P&L Statements accounted for the service charges paid to Canton Dockside, meaning service charges were included in Canton Dockside's gross receipts.  *See Exhibit G [Excerpts of William Ottey Dep. 122:21-130:21, Apr. 27, 2017].*  The "Transaction Detail By Account" (a report produced by QuickBooks) provides details of the information included in the "Tip Clearing" line item of the P&L Statement.  *See Exhibit G [Excerpts of Ottey Dep. 125:20-126:22, Apr. 27, 2017].*  The information contained in the column called "Debit" of the "Transaction Detail By Account" is derived from the line called "Tips Paid" of the DSSD (see top right corner of DSSD).  *See Exhibit G [Excerpts of Ottey Dep. 123:18-125:14, Apr. 27, 2017].*  The "Transaction Detail By Account" contains the total of all "Tips Paid" in the DSSD for a particular year.  *See Exhibit J [Transaction Detail By Account for July 1, 2014].*  The information contained in the column called "Credit" of the "Transaction Detail By Account" is

---

[7] The "Daily System Sales Detail" was a report produced on a daily basis reporting various sales information for the restaurant for a particular day.  *See Exhibit E [Excerpts of Ottey Deposition 22:9-23:7, Jan. 26, 2017]; see, e.g., Exhibit F [Daily System Sales Detail for July 1, 2014 (Ottey Dep. Ex. 7; 124:17-125:2, Apr. 27, 2017)].*

derived from the line called "Total Tips" of the DSSD (see top right corner of DSSD above "Tips Paid"). *See Exhibit G [Excerpts of Ottey Dep. 123:18-125:14, Apr. 27, 2017].* "Total Tips" includes "Service Charges," "Charged Tips," and "Tips Declared" (see top right corner of DSSD above "Total Tips"). *See Exhibit G [Excerpts of Ottey Dep. 123:18-124:2, Apr. 27, 2017]; see, e.g., Exhibit F [Daily System Sales Detail for July 1, 2014].* The "Transaction Detail By Account" contains the total of all "Total Tips" in the DSSD for a particular year. *See Exhibit J [Transaction Detail By Account for 2014].* The total numbers for "Debit" are subtracted from the total numbers for "Credit" for a particular year resulting in a "Balance." *See Exhibit J [Transaction Detail By Account for 2014].* Mr. Ottey referred to this as a "contra account." *See Exhibit G [Excerpts of Ottey Dep. 130:2-21, Apr. 27, 2017].* This "Balance" is the line item for "Tip Clearing" in the P&L Statements. *See Exhibit G [Excerpts of Ottey Dep. 122:21-123:2, Apr. 27, 2017]; see Exhibit J [Transaction Detail By Account for 2014]; see Exhibit I [P&L Statement January through December for 2014].* The figure in the line "Total Income" in the P&L Statement, which includes "Tip Clearing," is the same figure used in Line 1a of Canton Dockside's tax return. *See Exhibit G [Excerpts of Ottey Dep. 118:5-11, Apr. 27, 2017]; see Exhibit I [P&L Statement January through December for 2014].* Thus, Canton Dockside included services charges in its gross receipts.

To the extent that Plaintiff's experts use a different definition of gross receipts, interpret Canton Dockside's accounting records differently, or calculate a different dollar amount, those are all factual issues that a jury must decide. A reasonable jury could conclude Canton Dockside included service charges in its gross receipts. Therefore, because there is a genuine dispute as to this material fact, summary judgment is inappropriate.

### ii. Canton Dockside Paid Mandatory Deductions on Wages.

Despite Plaintiff's assertion otherwise [ECF No. 71 pg. 20], servers did not receive 100% of the service charges and voluntary tips on checks for customers. Rather, servers paid tip outs and transaction fees for credit cards from their voluntary tips and service charges paid to them. [ECF No. 71-4 pg. 6-7 (13:12-14:12)]. At the end of each day (or server shift), each server printed an Employee Detail report which summarized that server's time, sales, services charges, tips, and handwritten notations representing the tip-outs to bartenders and bussers. *See, e.g., Exhibit K [Prusin's Employee Details – June 29, 2015 to July 26, 2015][8]; see Exhibit A [Excerpts of Defendant Hamilton Dep. 170:19-176:19]*. The mandatory services charges and tips were collectively reported as "Service Charges" on nightly summaries and included with Canton Dockside's gross receipts. *See Exhibit H [Daily System Sales Report, Exhibit 3 from Ottey Dep., Jan. 26, 2017]*. Service charges and tips, whether paid via credit card or cash, were commingled with Canton Dockside's gross receipts with payments made by credit card deposited into bank accounts and all cash payments, regardless of source, placed into cash registers managed by the bartenders. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 170:19-176:19]*.

Bartenders at Canton Dockside would use the cash in the registers to pay commissioned employees (servers, bartenders, and bussers) at the end of each day or server shift. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 170:19-176:19]*. Service charges were included in employees' checks. [ECF No. 71-7 pg. 14-28]. *See Exhibit E [Excerpts of Ottey Dep. 57:1-13, Jan. 26, 2017]; see Exhibit L [Aff. of Defendant Hamilton, ¶ 4]*. Mr. Ottey provided detailed testimony regarding the taxes imposed on a server's wages, including on the services charges and tips. *See Exhibit E [Excerpts of Ottey Dep. 53:2-59:3, Jan. 26, 2017]*. More specifically,

---

[8] *See Exhibit L [Affidavit of Defendant Hamilton, ¶ 3, July 14, 2017]*.

even though service charges were paid daily, they were accounted for in the paycheck and subject to the same taxes as other forms of wages. *See Exhibit E [Excerpts of Ottey Dep. 57:14-59:3, Jan. 26, 2017].* Service charges and tips were included for withholding purposes and reported biweekly in pay stubs. *See Exhibit L [Aff. of Defendant Hamilton, ¶ 5].* The service charges and tips are referred to as "Tips Cash" in the Payroll Journal and separately reported under the "REIMB & OTHER PAYMENTS" column. [ECF No. 71-7 pg. 14-28]. *See Exhibit L [Aff. of Defendant Hamilton, ¶ 5].*

It is a material fact to Defendants' defense that Canton Dockside's payment of service charges to Plaintiff constitutes wages and may be used in their entirety to satisfy its minimum wage obligations. Plaintiff failed to establish that no reasonable jury could conclude Canton Dockside did not pay Plaintiff Canton Dockside's service charges or that such service charges were not included in Canton Dockside's gross receipts. Therefore, summary judgment is unwarranted on the issue of whether service charges should be included in considering Canton Dockside's compliance with FLSA wage obligations.

### C.  Canton Dockside Properly Paid Overtime Compensation to Plaintiff.

#### 1.  Applicable Law.

Per the FLSA during the statute of limitations period at issue, the effective minimum wage rate was $7.25 per hour. 29 U.S.C.A. § 206(a)(1)(C). Regarding overtime wages during the statute of limitations period at issue, an employer was required to pay an employee "compensation for his employment in excess of the hours above specified [more than forty hours in a workweek] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1). As set forth in Section III.B., *supra*, an employer may

distribute service charges to employees to satisfy the employer's FLSA wage obligations. 29 C.F.R. § 531.55(b).

Pursuant to § 207(i) of the FLSA, there is no overtime wage violation if: (1) the employee's "regular rate of pay" exceeds one and one-half times the applicable minimum wage rate (i.e., $7.25 per hour), and (2) more than half of the employee's "compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C.A. § 207(i). Pursuant to the Code of Federal Regulations, "[c]ommissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate." 29 C.F.R. § 578.117. The U.S. Department of Labor ("DOL") has issued several interpretive guidance handbooks for understanding the FLSA's obligations, including understanding the FLSA's retail or service establishment exemption under § 207(i). U.S. Dept. of Labor, FOH 21a00, et seq., *Field Operations Handbook – 04/07/2016* (2016). The DOL states: "A service charge levied on its customers by an establishment (e.g., hotel, motel, or restaurant), for services rendered by waiters, waitresses, or other such service employees (*see* FOH 30d04(a)), may qualify as a commission pursuant to section 7(i) [29 U.S.C.A. § 207(i)]" provided the other tests under 29 U.S.C.A. § 207(i)—the regular rate is at least 1.5 times the minimum wage, and at least half of the employees pay is from commissions—are satisfied. U.S. Dept. of Labor, FOH 21h07(a), *Field Operations Handbook – 04/07/2016*.

## 2. Analysis.

Canton Dockside's pay scheme included its payment of direct hourly wages and a portion of the service charge imposed on customer checks. Specifically, Canton Dockside's servers (including Plaintiff) received hourly wages of $3.63 per hour, tips, and service charges. [ECF

No. 71-7 pg. 14-28].  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 76:8-17]; see Exhibit B [Excerpts of Mitchell Dep. 35:20-36:14, Aug. 16, 2016].*  Payments of service charges and tips to servers were represented in Employee Sales and Tip Totals.  *See, e.g., Exhibit M [Plaintiff's Sales and Tip Totals – June 29, 2015 to July 26, 2015]; see Exhibit L [Aff. of Defendant Hamilton, ¶ 6].*

Also, Plaintiff's direct hourly wages are reflected in payroll records as a rate of $3.63 per hour.  [ECF No. 71-7 pg. 14-28].  The line called "Tips Cash" reflects the tips Plaintiff received from customers and the portion of the service charge imposed on customer checks that Canton Dockside paid to Plaintiff.  [ECF No. 71-7 pg. 14-28].  *See Exhibit L [Aff. of Defendant Hamilton, ¶ 5].*  From a server's tips and portion of service charges, servers tipped out bartenders in the amount of five percent (5%) of each server's beer, wine, and liquor sales.  *See Exhibit B [Excerpts of Mitchell Dep. 34:17-35:9, 56:20-57:1, Aug. 16, 2016].*  A server's beer, wine, and liquor sales for a particular shift or day are represented on the server's Employee Detail.  *See Exhibit K [Employee Detail – June 29, 2015 to July 26, 2015].*[10]  From a server's tips and portion of service chargers, servers tipped out bussers in the amount of thirteen percent (13%) of each server's services charges and tips.  *See Exhibit B [Excerpts of Mitchell Dep. 34:17-35:9, 56:20-57:1, Aug. 16, 2016].*  A server's services charges and tips for a particular shift or day are represented on the server's Employee Detail.  *See Exhibit K [Employee Detail – June 29, 2015 to July 26, 2015].*[11]

Defendants' expert witness (Anthony Pelura, MSF, CVA) produced two reports (an initial report and supplemental report) detailing his analysis of minimum and/or overtime wages possibly due to Plaintiff.  In particular, Mr. Pelura's supplemental report reviewed Plaintiff's

---

[10] See footnote 8, *supra.*
[11] See footnote 8, *supra.*

payroll records, Employee Sales and Tip Totals, and Employee Details to calculate the wages Canton Dockside paid Plaintiff via service charges after applicable deductions.[12]  *See Exhibit N [Pelura Supplemental Report].*

These facts are material and disputed between the parties.  Service charges must be considered when calculating overtime wages, and it is a clear Canton Dockside included service charges in its gross receipts (see Section III.B.2.i., *supra*).  Along with this consideration is whether Canton Dockside was permitted to take a tip credit against wages due to Plaintiff.  As analyzed above (see Section III.A., *supra*), there is a dispute regarding this issue.  Finally, a comparison of Defendants' expert's reports with Plaintiff's expert's report [ECF No. 71-1 pg. 3-12] shows that the calculation of overtime wages is highly disputed.  *See Exhibit N [Pelura Supplemental Report].*  These calculations are material facts, including whether Canton Dockside's payment of service charges to Plaintiff may satisfy Canton Dockside's overtime wage obligations.  Moreover, the exact calculation of overtime wages due to Plaintiff depends on the statute of limitations period.  For these reasons, this Court should deny Plaintiff's request for summary judgment on this issue.

### D.  No Award of Liquidated Damages Is Warranted.

#### 1.  Applicable Law.

"Courts have routinely held that there is a presumption in favor of an award of liquidated damages *when it is determined that the employer has violated the FLSA*."  *Melgar Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2016 WL 2990720, at *4 (D. Md. May 20, 2016) (citing *Rogers v. Sav. First Mortg.*, LLC, 362 F. Supp. 2d 624, 637 (D. Md. 2005)) (*emphasis* added).  Congress provided the district courts discretion to withhold an award

---

[12] Mr. Pelura's supplemental report considered the tip outs made from Plaintiff's service charges and tips.  *See Exhibit N [Pelura Supplemental Report].*

of liquidated damages for FLSA violations: "[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was *in good faith* and that *he had reasonable grounds* for believing that his act or omission was not a violation of the [FLSA] the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216(b)].'" *Rogers*, 362 F. Supp. 2d at 637-38 (quoting 29 U.S.C. § 260) (*emphasis* in original).  "A court cannot evaluate the 'reasonableness' of an employer's belief that its 'act or omission was not a violation' without first identifying the 'act or omission.'  Then, and only then, is the court in a position to ascertain what the employer believed about its acts or omissions, and to evaluate the employer's reasons for so believing." *Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 373 (D.C. Cir. 1994).

## 2.  Analysis.

It is evident Defendants complied with the FLSA's overtime wage obligations as stated in the arguments previously set forth herein regarding Defendants' payment of overtime wages to Plaintiff (see Section III.C., *supra*).  Because there was no FLSA overtime wage violation, the court cannot award liquidated damages.  Even if overtime wages were ultimately due to Plaintiff, this Court could, and should, exercise its discretion to deny an award of liquidated damages as Defendants acted in good faith and had reasonable grounds to believe Plaintiff was properly paid.  *See Rogers*, 362 F. Supp. 2d at 637-38.

Generally, overtime wages are determined by one and one-half times the regular rate of pay.  However, there is no overtime wage violation if the two-part exemption of Section 207(i) of the FLSA is satisfied: (1) the employee's "regular rate of pay" exceeds one and one-half times the applicable minimum wage rate (i.e., $7.25 per hour), and (2) more than half of the

employee's "compensation for a representative period (not less than one month) represents commissions on goods or services."  29 U.S.C.A. § 207(i).

Here, Plaintiff's regular rate of pay during weeks in which Plaintiff worked overtime consistently exceeded $7.25 per hour.[13]  *See Exhibit O [Pelura Initial Report]; see Exhibit N [Pelura Supplemental Report]*.  Furthermore, more than half of Plaintiff's compensation was from Canton Dockside's payment of service charges to Plaintiff.  *See Exhibit O [Pelura Initial Report]; see Exhibit N [Pelura Supplemental Report]*.  As stated by Dr. Earl Hamilton (owner of Canton Dockside) ("Dr. Hamilton"), Canton Dockside incorporated a policy adding service charges to customer checks to ensure servers received "the money that they deserve."  *See Exhibit P [Excerpts of Dr. Hamilton Dep. 29:2-30:13, May 1, 2017]*.  As such, Defendants acted in good faith and with an objectively reasonable belief that Canton Dockside paid all overtime wages due to Plaintiff considering the exemption of Section 207(i) of the FLSA.

At a minimum, there is a genuine issue of material fact on this issue.  Plaintiff has not proven he is due unpaid overtime wages and, thus, summary judgment on liquidated damages for unpaid overtime wages is likewise inappropriate.  It is a material fact to this case whether Defendants paid all overtime wages due to Plaintiff and directly affects the outcome of this case, including whether liquidated damages are appropriate.  As set forth above (including in Section III.C., *supra*), a reasonable jury could consider the evidence and find in favor of Defendants.  Specifically, a reasonable jury could determine that Defendants provided Plaintiff the proper notice to take a tip credit and/or could determine Plaintiff is not owed any overtime wages because of Canton Dockside's payment of wages derived from the service charges.

---

[13] Defendants remind the court that they filed a Motion for Partial Summary Judgment arguing the statute of limitations period for the FLSA should be two years, not three years.

**E.  Defendant Eric Hamilton Was Not Plaintiff's "Employer" Under the FLSA.**

**1.  Applicable Law.**

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Determining whether an individual is an employer pursuant to the FLSA depends "on the 'economic reality' of that individual's status in the workplace."  *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 775 (D. Md. 2014) (citing *Gionfriddo*, 769 F. Supp. 2d at 890).  The U.S. District Court of Maryland has acknowledged the following relevant factors for determining if an individual is an employer: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Mould*, 37 F. Supp. 3d at 775 (internal quotations and citations omitted).  The totality of the circumstances must be considered, not just one factor.  *Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 40 (2012) (internal quotations and citations omitted).  In holding that a manager was not an employer within the meaning of the FLSA, the U.S. District Court of Maryland cautioned: "Were we to hold otherwise, we would set the precedent that any manager who has some direction in hiring, wages, and other conditions of employment is *personally liable* for wages that the manager's own employer is unable or unwilling to pay."  *Campusano*, 208 Md. App. at 41 (*emphasis in original*).[14]

---

[14] Defendants acknowledge that *Campusano* continues: "Simply stated, managers with no equity interest in the fruits of employee labor should not have to act as insurers of last resort, either to their employers or to the employees that they supervise."  *Campusano*, 208 Md. App. at 41.  However, as analyzed below, Defendants maintain Defendant Hamilton owned a mere five percent (5%) ownership interest in Canton's Pearls, LLC.  *See Exhibit Q [Operating Agreement pg. 35]; see Exhibit R [Assignment of Membership pg. 2]*.  Furthermore, Defendant Hamilton did not receive any profits from his limited ownership interest.  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 122:5-123:19]; see Exhibit S [2013-2015 Schedule K-1s issued by Canton's Pearls, LLC to Defendant Hamilton]; see Exhibit L [Aff. of Defendant Hamilton, ¶ 7]*.

"However, courts must also respect the corporate form, and an officer of a corporation is not necessarily an employer for FLSA purposes." *Mould*, 37 F. Supp. 3d at 775 (citing *Caseres v. S & R Mgmt. Co.*, No. AW–12–1358, 2012 WL 5250561 at *3 (D. Md. Oct. 24, 2012)). As such, corporate officers have been found to not be an employer as defined by the FLSA. *See Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (finding that principal shareholder/president lacked operational control to be considered "employer" within the meaning of the FLSA, as he was involved in the day-to-day operation of business and did not have direct responsibility for the supervision of the employee). It has been "explained that the four-factor analysis of control focuses 'on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits.'" *Campusano*, 208 Md. App. at 40 (quoting *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)) (emphasis in original). "In addition to direct evidence of such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business....Such indicia, while not dispositive, are important to the analysis because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." *Campusano*, 208 Md. App. at 40 (quoting *Baystate Alternative Staffing*, 163 F.3d at 678).

## 2.  Analysis.

Defendant Hamilton was not Plaintiff's employer. Defendant Hamilton had only limited operational authority during his employment at Canton Dockside and no operational authority after he ceased working at Canton Dockside. Since the inception of Canton's Pearls, LLC, Defendant Hamilton has owned five percent (5%) of the Class A Membership Interest in

Canton's Pearls, LLC.  *See Exhibit Q [Operating Agreement pg. 35]; see Exhibit R [Assignment of Membership pg. 2].*  Dr. Earl Hamilton (Defendant Hamilton's father) or Dr. Hamilton's business entities own all remaining interest in Canton's Pearls, LLC.[15]  *See Exhibit Q [Operating Agreement pg. 35]; see Exhibit R [Assignment of Membership pg. 2].*  Pursuant to the Operating Agreement, Class A and Class B members vote in proportion to their respective percentage of interest in Canton's Pearls, LLC.  *See Exhibit Q [Operating Agreement pg. 13].*  Defendant Hamilton had limited authority or voting power over Canton Dockside as he had only a five percent (5%) ownership interest versus Dr. Hamilton's effective ninety-five (95%) ownership interest.  Only Dr. Hamilton could enter contracts on behalf of Canton Dockside, have full power over Canton Dockside's daily operations, and delegate authority.  *See Exhibit Q [Operating Agreement pg. 14].*

Furthermore, the Operating Agreement designated Dr. Hamilton as the "Manager," providing him specific authority.  *See Exhibit Q [Operating Agreement pg. 14].*  In this role, Dr. Hamilton had: (1) "<u>full power</u> to execute for and on behalf of the Company [Canton's Pearls, LLC];" "<u>full power</u> on a day-to-day basis to manage the business of the Company [Canton's Pearls, LLC], including, but not limited to, all decisions regarding personnel matters, marketing, menu items, and the maintenance, repair, replacement, and management of any real or personal property owned or leased by the Company [Canton's Pearls, LLC];" and delegate daily management of Canton Dockside to an "in-store manager."  *See Exhibit Q [Operating Agreement pg. 14] (emphasis added).*  Defendant Hamilton was designated as the "in-store manager" though his authority in this capacity was limited.  *See Exhibit Q [Operating Agreement pg. 14].*  Specifically, the Operating Agreement stated: "The hiring and firing of said 'in-store

---

[15] Edward Snyder and Vernon Martin each previously had an ownership interest in Canton's Pearls, LLC, but sold their interest to Dr. Hamilton.  *See Exhibit T [Excerpts of Edward Snyder Deposition 6:8-16, 8:14-9:11, May 26, 2017]; see Exhibit U [Excerpts of Vernon Martin Deposition 15:15-16:5, 16:22-17:7, May 26, 2017].*

manager' [Defendant Hamilton] shall be at the discretion of the Manager [Dr. Hamilton] and the salary from time to time of said 'in-store manager' [Defendant Hamilton] shall be approved by the majority of the Members." *See Exhibit Q [Operating Agreement pg. 14].*

Analyzing these facts against the "economic reality" test shows that Defendant Hamilton had no actual authority or operational control regarding Canton Dockside.  First, even if Defendant Hamilton had some authority to hire and fire employees in his capacity as in-store manager, Dr. Hamilton had the last word; only Dr. Hamilton had the "full power" regarding personnel matters, including hiring and firing employees.  Defendant Hamilton did not even have control over his own employment as Canton Dockside's in-store manager and was subject to termination by Dr. Hamilton.  Likewise, and with regard to the second factor, Dr. Hamilton's full power over personnel matters would include supervising and controlling employee work schedules or conditions of employment.  Furthermore, Defendant Hamilton was not in charge of scheduling for Canton Dockside.  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 96:6-97:4].*  Even if Dr. Hamilton delegated some amount of this authority to Defendant Hamilton during Defendant Hamilton's tenure as the in-store manager, the actual authority rested with Dr. Hamilton.  Third, Dr. Hamilton had the actual authority regarding the rate and method of payment to employees based on his full power over personnel matters.  Plaintiff's pay structure was set by Dr. Hamilton, and subject to Dr. Hamilton's discretion.  Likewise, Defendant Hamilton's own salary was subject to Dr. Hamilton's discretion.  Finally, William Ottey (Canton Dockside's and Dr. Hamilton's personal accountant) maintains and stores Canton Dockside's records, not Defendant Hamilton.  *See Exhibit A [Excerpts of Defendant Hamilton Dep. 94:3-95:2, 206:5-208:6, 209:1-7].*

Moreover, Defendant Hamilton ceased having daily involvement in the operations of Canton Dockside after his employment as in-store manager with Canton Dockside ended in May 2015. *See Exhibit P [Excerpts of Dr. Earl Hamilton Deposition 17:19-18:11]; see Exhibit A [Excerpts of Defendant Hamilton Dep. 8:6-9:21, 31:18-33:20, 36:1-37:6].* Since his employment ended with Canton Dockside, Defendant Hamilton has not communicated with Mr. Ottey regarding Canton Dockside's financial affairs. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 31:18-32:20, 36:1-37:6].* Also, and as was the same during his employment, Defendant Hamilton has not been involved in Canton Dockside's payroll. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 246:2-247:12].* Likewise, Defendant Hamilton was not involved in the scheduling of servers after he left Canton Dockside, as was the same during his employment. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 158:9-159:1].*

In considering these facts with the "economic reality" test and the totality of the circumstances, Defendant Hamilton should not be personally liable for any alleged damages to Plaintiff. Defendant Hamilton does not meet the "economic reality" test simply because he owns an insignificant ownership interest in Canton Dockside. As outlined above, any authority he had existed only when he was Canton Dockside's in-store manager and, even then, was entirely controlled and delegated by Dr. Hamilton. Furthermore, he did not (and does not) have control over significant aspects of the business. At a minimum, Plaintiff has not satisfied the summary judgment standard as these are material facts that go directly to the issue of whether Defendant Hamilton should be personally liable and a reasonable jury could find in favor of Defendant Hamilton. As such, the Court should deny Plaintiff's request on this issue.

**IV.    Defendants' Reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment.**

Plaintiff's response to Defendants' Motion for Partial Summary Judgment does not present a genuine issue concerning a material fact for trial, and Defendants' Motion for Partial Summary Judgment should be granted.  Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984)).  Plaintiff has not met this standard.

The FLSA's statute of limitations will be extended to three (3) years only where a claim arises "out of a willful violation." 29 U.S.C. § 255(a).  "Willful" under the FLSA requires more than negligence and that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988) (adopting the standard set forth in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S. Ct. 613, 624, 83 L. Ed. 2d 523 (1985)).  "Proof of willfulness must be far stronger, such as evidence that the defendant had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations." *Williams v. Maryland Office Relocators*, 485 F. Supp. 2d 616, 621 (D. Md. 2007) (internal citations omitted).

Defendant Hamilton's testimony shows that Defendants' conduct did not meet the willfulness standard.  Defendant Hamilton testified Canton Dockside's pay scheme was based on a variety of sources.  Although Defendant Hamilton was not involved with overseeing Canton

Dockside's payroll, he testified that Plaintiff's rate of pay was based on the industry standard and that he had never heard any different rate for servers besides $3.63 per hour. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 76:20-78:15].* In addition to the industry standard, he stated it was based on his personal experience at Seaside Restaurant. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 126:3-21].* Moreover, he stated William Ottey (Canton Dockside's accountant and former payroll manager) and Paychex, Inc. (Canton Dockside's most recent third-party payroll processor) provided guidance of the minimum wage standard. [ECF No. 27 ¶¶ 18-21]. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 78:16-80:5, 117:21-118:6].*

Defendant Hamilton stated that Canton Dockside's knowledge of its general legal requirements was through common knowledge. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 58:10-59:1, 119:15-121:21].* Furthermore, Canton Dockside was previously a member of a restaurant industry association called Restaurant Association of Maryland ("RAM"), which Defendant Hamilton testified Canton Dockside's membership ended in the mid-2000s. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 68:18-71:1, 71:17-72:3, 89:15-18].*

The testimony of Timothy Mitchell (Canton Dockside's former manager) was consistent with Defendant Hamilton's testimony and supports the position Defendants' conduct does not meet the willfulness standard. Mr. Mitchell likewise testified he based his understanding of payroll practices on the industry standard and his personal experience as a server. *See Exhibit B [Excerpts of Mitchell Dep. 16:11-17, 60:5-61:10, Aug. 16, 2016]; see Exhibit V [Excerpts of Mitchell Dep. 31:1-10, May 19, 2017].* He also testified he relied upon Paychex, Inc. (Canton Dockside's third-party payroll processor), which he believed populated the correct rate for tipped employees. *See Exhibit V [Excerpts of Mitchell Dep. 32:18-33:3, May 19, 2017].* Moreover, he stated Canton Dockside communicated with William Ottey (Canton Dockside's accountant and

former payroll manager) when Canton Dockside first opened. *See Exhibit B [Excerpts of Mitchell Dep. 17:5-16, Aug. 16, 2016].* Finally, Canton Dockside did not receive actual notice from servers, as no servers complained about the wages they were paid. *See Exhibit B [Excerpts of Mitchell Dep. 20:10-12, Aug. 16, 2016].*

Plaintiff's response to Defendants' Motion for Partial Summary Judgment relies solely upon the assertion that Defendant Hamilton's and Mr. Mitchell's testimony is inconsistent with the testimony of Edward Snyder and Vernon Martin.[16] However, Defendant Hamilton and Mr. Mitchell were last employed at Seaside Restaurant over a decade before they were deposed. [ECF No. 71-9 pg. 4 (12:12-19)]. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 64:11-12, 66:14-19].* Since they worked at Seaside Restaurant, both Defendant Hamilton and Mr. Mitchell testified Canton Dockside relied up its accountant and Paychex, Inc.[17] to provide guidance for its payroll practices since Canton Dockside opened, events unrelated and unknown to Mr. Snyder and Mr. Martin. Moreover, Canton Dockside's overall pay scheme was different than Seaside Restaurant. Seaside Restaurant did not have service charges (mandatory gratuities) when Defendant Hamilton and Mr. Mitchell. [ECF No. 71-9 pg. 3 (11:2-6)]. Meanwhile, Canton Dockside imposed service charges on checks, which were added after Canton Dockside opened, and constituted wages.[18] *See Exhibit P [Excerpts of Dr. Hamilton Dep. 29:2-30:13].* Again, Canton Dockside incorporated services charges to customer checks to ensure servers received a fare wage. *See Exhibit P [Excerpts of Dr. Hamilton Dep. 29:2-30:13].*

Based on the information presented in Defendants' Motion for Partial Summary Judgment, Defendants' alleged FLSA violations were not willful. Defendants did not have any

---

[16] Despite Plaintiff's assertion, Mr. Martin specifically stated he was merely an investor in Seaside Restaurant and did not have knowledge of human resource or overtime practices. [ECF No. 71-10 pg. 3 (10:14-11:19)]. Thus, Mr. Martin made an assumption that Seaside Restaurant complied with the law, but had no actual knowledge that it did.

[17] As previously stated herein, Paychex, Inc. provided payroll services to Canton Dockside for the entire period at issue. *See Exhibit A [Excerpts of Defendant Hamilton Dep. 39:15-41:20].*

[18] See Section III.B., *supra*, regarding service charges constituting wages.

malignant intent.   Rather, they relied upon the advice of their payroll processors, which this

Court has held is not reckless.  *See Mould*, 37 F. Supp. 3d at 772-73.  Furthermore, there is no

evidence Canton Dockside was ever investigated for FLSA violations or that there was a scheme

by Canton Dockside to cover-up FLSA violations.  *See Williams v. Maryland Office Relocators*,

485 F. Supp. 2d 616, 621 (D. Md. 2007) (providing examples of evidence of willfulness).

      WHEREFORE, for the foregoing reasons, Defendants, Canton's Pearls, LLC t/a Canton

Dockside, and Eric Hamilton, respectfully request that the Court deny Plaintiff's Motion for

Partial Summary Judgment and grant Defendants' Motion for Partial Summary Judgment.


Respectfully submitted,                                    Respectfully submitted,


KRAMON & GRAHAM, P.A.                        STAITI & DIBLASIO, LLP


_____/s/_____             _____/s/ Christopher Staiti_____
Andrew Jay Graham, Esq. (Bar No. 00080)      Christopher T. Staiti, Esquire
Justin A. Redd, Esq. (Bar No. 18614)         MD Fed. Bar. No. 28738
One South Street, Suite 2600                 401 Headquarters Drive, Suite 202
Baltimore, Maryland 21202                    Millersville, Maryland 21108
Phone: (410) 752-6030                        Phone: (410) 787-1123
Fax: (410) 539-1269                          Fax: (443) 628-0093
agraham@kg-law.com                           cstaiti@Staiti-DiBlasio.com
jredd@kg-law.com

                                             ATTORNEYS IN CHARGE FOR
                                             Defendants Canton's Pearls, LLC and
                                             Eric Hamilton

<u>CERTIFICATE OF SERVICE</u>

      I certify that I sent a copy of Defendants' Opposition to Plaintiff's Motion for Partial
Summary Judgment and Defendants' Reply to Plaintiff's Response to Defendants' Motion for
Partial Summary Judgment was served this 17th day of July, 2017 via ECF on all parties
authorized to accept service by ECF.

                                 _____/s/ Christopher Staiti_____
                                 Christopher T. Staiti, Esquire