**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KRISTOFER L. PRUSIN,** | * | |
| Plaintiff, | * | |
| v. | * | **CIVIL NO. JKB-16-00605** |
| **CANTON'S PEARLS, LLC,** et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Kristofer Prusin ("Plaintiff") filed suit against Canton's Pearls, LLC, and Eric K. Hamilton ("Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Labor & Emp't §§ 3-401, *et seq.*, and the Maryland Wage Payments and Collection Law ("MWPCL"), Md. Code Ann. Labor & Emp't §§ 3-501, *et seq.* Now pending before the Court is Defendants' Motion for Partial Summary Judgment on statute of limitations grounds. (ECF No. 27.) The issues have been briefed (ECF Nos. 27, 71, & 77), and no hearing is required, Local Rule 105.6 (D. Md. 2016). For the reasons explained below, Defendants' motion will be GRANTED IN PART and DENIED IN PART.

*I.  Background*

Plaintiff previously worked as a server at Canton Dockside, a restaurant and crab house operated by Defendants. He was employed in that position from April 2013 through October 2015. During that time, Canton Dockside was managed by Eric Hamilton and Timothy

Mitchell.[1]  Hamilton and Mitchell had previously worked together as servers and shift managers at another local restaurant, Seaside.[2]

As a server, Plaintiff was a non-exempt employee within the meaning of the FLSA and MWHL.  Plaintiff was paid an hourly wage of $3.63 plus voluntary tips and mandatory service charges paid by customers.[3]  At the end of each shift he was given one-hundred percent of his tips and service charges in cash less the amount he was required to tip-out to bussers and bartenders.  Servers were required to give bussers thirteen percent of their tips and to give bartenders five percent of their beer, wine, and liquor sales.[4]  Plaintiff was not compensated at a different rate for overtime hours—i.e., hours worked in excess of forty hours per week.

On March 3, 2016, Plaintiff filed this lawsuit alleging that Defendants violated the FLSA, the MWHL, and the MWPCL by failing to pay him minimum and overtime wages.  Furthermore, he alleges that these violations were willful, thereby entitling him to recover damages for the three year period preceding the filing of this suit.  Defendants filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 arguing that any violation (which they do not concede) was not willful, and therefore Plaintiff's FLSA claims should be subject to the default two-year statute of limitations.[5]

---

[1] Canton Dockside is owned by Canton's Pearls, LLC, the named corporate defendant in this suit.  Eric Hamilton has a limited ownership stake in Canton's Pearls, LLC, and his father, Earl Hamilton, owns the remainder.

[2] Canton Dockside was originally a joint venture between the Hamiltons and the former owners of Seaside, Edward Snyder and Vernon Martin.  However, Earl Hamilton bought out Snyder and Martin soon after Canton Dockside opened.

[3] Defendant Canton imposed a mandatory 15% service charge on all customers' checks.  Servers, however, could choose not to include this charge and instead rely on voluntary tips from customers.

[4] Servers were also charged an administrative fee (which varied depending on the credit card) for all payments made by credit card.

[5] Plaintiff's minimum wage and overtime claims brought under the MWHL and the MWPCL are not implicated by Defendants' motion as those claims are subject to Maryland's general three-year statute of limitations for civil claims.  *See* Md. Code Ann., Courts & Judicial Proceedings § 5-101.

## II. Standard for Summary Judgment

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is present and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. Fed. R. Civ. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. Analysis

Plaintiff alleges that Defendants willfully violated the FLSA thereby entitling him to recover up to three years' of back pay. Defendants contend that any violation was not willful because they reasonably believed their pay structure was consistent with the "industry standard" and therefore presumably lawful. More specifically, Defendants assumed that William Ottey (Canton Dockside's accountant and former payroll processor) and Paychex, Inc., (a third-party payroll processor used by Canton Dockside) would have informed them of any potential

noncompliance with wage laws.  They also contend that they reasonably relied on Defendant Hamilton and Mr. Mitchell's past experience as servers at Seaside in determining whether to pay servers at Canton Dockside overtime wages.

If Defendants' alleged violations were willful, a three-year statute of limitations applies to Plaintiff's claims; if not, a two-year statute of limitations applies.  *See* 29 U.S.C. § 255(a); *see also, e.g.*, *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011).  "The question of whether an employer acted willfully is generally a question of fact." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015), *cert. denied*, 137 S. Ct. 53 (2016).

To establish that Defendants' conduct was willful, Plaintiff must show that they "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the [FLSA]." *Desmond*, 630 F.3d at 358 (second alteration in original) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)); *see also Calderon*, 809 F.3d at 130 ("The burden to establish willfulness rests with the employee.").  "Negligent conduct is insufficient to show willfulness." *Desmond*, 630 F.3d at 358.  Nor is an employer's violation of the FLSA willful where it is the result of a "completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." *McLaughlin*, 486 U.S. at 135.  Indeed, even where "an employer acts *unreasonably*, but not recklessly, in determining its legal obligation" a violation is not willful.  *Id.* at 135 n.13 (emphasis added); *cf. Williams v. Md. Office Relocators*, 485 F. Supp. 2d 616, 621 (D. Md. 2007) (noting that willfulness is a demanding standard, which generally requires "evidence that the defendant had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations"), *superseded by statute on other grounds as recognized by Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 450 (D. Md. 2015).

### A. *FLSA Minimum Wage Claims*

Assuming *arguendo* that they violated the FLSA's minimum wage provisions, Defendants contend that their conduct was not willful because they reasonably believed that they were in compliance with federal and state labor laws. Specifically, Defendants contend that they assumed they were in compliance with the law because "it was [their] understanding . . . that $3.63 an hour across the board was the industry standard." (ECF No. 27, Ex. B at 60–61, Mitchell Dep., Corporate Designee.) Moreover, they relied on third-party payroll processors to advise them of any errors in their pay structure. (ECF No. 27, Ex. A ¶¶ 17–20, Affidavit of Defendant Eric Hamilton.) Notably, Plaintiff has not pointed to any evidence in the record in support of his argument that Defendants' willfully violated the minimum wage provisions of the FLSA.[6]

Based on the evidence before the Court, Defendants' conduct was certainly negligent (and even unreasonable), but it was not reckless. Defendants testified that they believed that the wages they paid servers were consistent with standard industry wide pay practices. (ECF No. 77, Ex. V, Mitchell Dep., Corporate Designee ("Q: And certainly it was your understanding that you were paying the industry standard or the correct minimum wage rate to your servers? A: That's correct.") This claim is reasonable given that $3.63—the amount Defendants paid Plaintiff and other servers—is the minimum wage that an employer in Maryland may pay when claiming the tip credit. The fact that Defendants appear to have been entirely ignorant of the preconditions imposed by the FLSA (and the MWHL) before paying this reduced wage, does not *alone* indicate that Defendants' conduct was willful. *See, e.g.*, *Mould v. NJG Food Serv. Inc.*, 37 F.

---

[6] Plaintiff's response to Defendants' motion *does* point to specific evidence of willfulness with regard to Defendants' alleged failure to pay him overtime wages. The allegations are addressed *infra* Section III.B.

Supp. 3d 762, 772 (D. Md. 2014) (finding FLSA minimum wage violation not willful where "Defendants were aware that they could pay tipped employees less than the federal minimum wage of $7.25, but, allegedly, 'did not understand that there [were] a number of preconditions for paying tipped employees $3.63/hour.'").

Additionally, Defendants testified that they assumed their third-party payroll processor would have advised them of any "payroll errors," including noncompliance with relevant labor laws. Again, Defendants may have acted negligently in relying on a third-party payroll processor to determine their legal obligations under the FLSA; but their conduct was not willful—i.e., there is no evidence that they knew or showed reckless disregard for whether their conduct was prohibited by the FLSA. *See Mould*, 37 F. Supp. 3d at 773 (finding FLSA minimum wage violation not willful where Defendants "assumed their 'payroll processor would have advised [them] if there were any legal conditions that [needed to be satisfied] before paying $3.63/hour to a tipped employee.'" (alterations in original)). Indeed, Defendants' reliance on Paychex was arguably reasonable given that **Paychex** "**set up the system for hourly employees**, for tipped employees." (ECF No. 77 Ex. V at 32–33 (emphasis added).) And Defendants testified that **Paychex** "**populated** [$3.63] as the server pay rate." (*Id.* at 33 (emphasis added).) *Cf. Mould*, 37 F. Supp. 3d at 772 (finding no willfulness based, in part, on employer's reliance on third-party payroll processor despite fact that "payroll processor did little more than issue checks based on payroll information **provided by Defendants' bookkeeper**" (emphasis added)).

Moreover, Plaintiff has not put forth *any* evidence showing that Defendants' were aware of any potential labor law violations or otherwise acted in a manner evidencing willfulness. Defendants testified that they had never been investigated for FLSA violations. (ECF No. 27, Ex. B at 82.) They further testified that no other employee had ever complained about his or her

6

wages. (*Id.*) Even drawing all inferences in Plaintiff's favor, there is simply no evidence from which to infer willfulness by Defendants with regard to the minimum wage allegations. *Cf. Rankin v. Loews Annapolis Hotel Corp.*, Civil Case No. L–11–2711, 2012 WL 1632792, at *2 (D. Md. May 7, 2012) (finding that plaintiff's allegations regarding "a written agreement between [defendant] and its employees that precluded them from recording their overtime" were "sufficient to support an inference of willfulness").

In sum, the evidence before the Court reveals that Defendants' had a limited understanding of their minimum wage obligations under the FLSA (and similar state laws) but believed they were in compliance with those laws. This does not amount to a willful violation of the FLSA.

None of the foregoing should be construed as an endorsement of Defendants' apparently cavalier approach to the law. To the contrary, the Court is troubled by Defendants' "ostrichlike attitude of self-delusion," *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984), with regard to their obligation to fully investigate the requirements of the FLSA. However, "Congress distinguished between ordinary and willful violations of the FLSA" for a reason, and the Court must be mindful not to "obliterate[] the distinction" by adopting an overly "expansive definition of willful." *Desmond*, 630 F.3d at 358. In availing themselves of the tip credit allowed by the FLSA but admittedly, and therefore apparently, failing to determine whether any legal conditions needed to be satisfied prior to taking such a tip credit, Defendants' conduct was unreasonable but falls short of the recklessness required for the Court to find that their violation of section 203(m) was willful.[7] Simply put, Plaintiff asks the Court to infer too much from Defendants' ignorance

---

[7] Defendant Hamilton testified that the server pay of $3.63/hour was based on his understanding of the "industry standard" but otherwise seemed unaware of the legal grounds for paying this rate as the minimum wage for servers. (ECF No. 77, Ex. A at 76–77, Hamilton Dep. ("Q: And the $3.63-an-hour pay to Prusin, who determined that rate of pay? A: That was like the—it's the server pay. It's like the industry standard if you will.");

of the law, and therefore has not met his burden to show there is a genuine dispute of material fact on this issue. Accordingly, the Court will GRANT Defendants' motion for summary judgment insofar as it seeks to restrict Plaintiff's FLSA *minimum wage* claims to the two years preceding the filing of the lawsuit.

### B. *FLSA Overtime Wage Claims*

Contrary to the alleged notice provision violation, Plaintiff *has* presented evidence that suggests that Defendants knew that their alleged failure to pay overtime wages violated the mandates of the FLSA. In deposition testimony, Defendant Hamilton and Mr. Mitchell stated that they were not paid overtime when they worked as servers at Seaside prior to opening Canton Dockside. Defendants argue that they relied on this past experience when deciding not to pay overtime to servers at Canton Dockside, assuming it was the industry standard. However, Plaintiffs have provided evidence that Defendants in fact did receive overtime wages when they were employed as servers at Seaside. In light of this conflicting testimony, Plaintiff argues that a "rational factfinder could conclude that the Defendants' testimony was false," (ECF No. 71 at 28), and therefore their failure to pay overtime was knowing and willful.

---

*id.* at 77–78 (Q: Where did this 3.63 number come from? A: Federal government, isn't it? Or is that State? Q: You tell me. A: I'm asking. Standard federal law—whatever the minimum wage is, that's what we paid.").) Moreover, Mr. Mitchell, testifying as the Corporate Designee for Defendants, stated that neither he nor anyone else in a managerial role at Canton Dockside had ever informed a tipped employee of the existence of the FLSA tip credit provision or Defendants' intention to claim the tip credit to satisfy their minimum wage obligations under the FLSA. (ECF No. 71, Ex. 3 at 42 ("Q: Have you ever sat down and told a tipped employee anything about the tip credit . . . ? A: No."); *id.* at 44–45 ("Q: Have you ever told a tipped employee that they are entitled to retain all of their tips except pursuant to a valid tip pool arrangement? A: No. Q: Have you ever instructed a front of the house manager to tell tipped employees that they are entitled to retain all of their tips except pursuant to a valid tip pool arrangement? A: No. Q: [D]id you ever tell tipped employees the exact amount of the tip credit under Federal and/or State Law? A: No. Q: Did you ever instruct any managers to tell any tipped employees about the exact amount of the tip credit under Federal and/or State Law? A: No. Q: Did Eric Hamilton ever instruct you to advise tipped employees of the amount of the tip credit being taken under Federal and/or State Law? A: No.").) The Court does not offer an opinion at this time as to whether Defendants violated the tip credit notice provisions of the FLSA. Rather, it simply highlights this testimony to note Defendants' apparent lack of awareness and understanding of the FLSA's tip credit requirements.

Specifically, Edward Snyder, one of the owners and managers of Seaside, testified that Defendant Hamilton and Mitchell were both paid overtime as tipped employees at Seaside. (ECF No. 71, Ex. 9 at 13, Snyder Dep. ("Q: Now, during the time that Eric Hamilton and Tim Mitchell were employed by Seaside, did Seaside pay overtime to its servers or bartenders or other tipped employees?  A: Yes.  Q: It did?  A: Yes."); *Id.* at 14 ("Q: Would you be surprised to learn that Mitchell has testified in this case that Seaside did not pay overtime? . . . A: Yeah. Shocked.  Q: Is that incorrect?  A: That's incorrect. Yes.").)  This testimonial evidence directly contradicts Defendants' rationale for allegedly not paying overtime; namely, that they did not receive overtime as servers at Seaside and therefore assumed that was the industry standard. (ECF No. 71, Ex. 3 at 16, Mitchell Dep., Corporate Designee ("Q: And what was the basis for the company's understanding that the law did not require time and a half for work in excess of forty hours per week?  A: It has just been our understanding that has been the industry standard, that you know, even from when I was a server at Seaside, tipped employees did not get paid overtime."); *Id.*, Ex. 4 at 31, Mitchell Dep. ("Q: And you testified that this understanding even went back to when you were working at the Seaside restaurant?  A: When I was a server myself, that's correct.  Q: What was the basis for that understanding that this was an industry standard?  A: I guess because I've worked overtime and I never received time and a half.").)  Thus, the Court is faced with conflicting testimony regarding the basis for Defendants' understanding that they were not required to pay overtime wages to tipped employees, including Plaintiff.  In other words, the question of whether Defendants acted willfully depends on a genuine dispute of fact that is material.  Moreover, this dispute hinges on a credibility determination, making it particularly ill-suited for resolution on summary judgment.

In sum, based on the evidence before the Court, a rational factfinder could conclude that Defendants received overtime pay as servers at Seaside and therefore willfully violated the FLSA by allegedly failing to pay Plaintiff such wages. Accordingly, Defendants' motion for summary judgment as to willfulness is denied with regard to the alleged overtime violation.

## IV. Conclusion

For the foregoing reasons, an Order shall enter GRANTING IN PART and DENYING IN PART Defendants' Motion for Partial Summary Judgment (ECF No. 27).

DATED this 29th day of September, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge