**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KRISTOFER L. PRUSIN, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-16-0605 |
| CANTON'S PEARLS, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM & ORDER**

*I. Background*

This case was brought by Plaintiff Kristofer L. Prusin against Canton's Pearls, LLC, and Eric Hamilton under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (Compl., ECF No. 1.) After considerable litigation, the Court granted partial summary judgment for Plaintiff on his claim that Defendants violated the minimum wage and overtime pay provisions of the FLSA and MWHL, and it also ruled that Defendant Hamilton qualified as Plaintiff's employer under the FLSA and MWHL from the beginning of Plaintiff's employment through May 2015. (Order, Nov. 6, 2017, ECF No. 99.) It denied, however, Plaintiff's request for an award of $38,330.12 because the Court concluded that Plaintiff's calculation of a judgment amount was confused in relation to both the applicable statute of limitations under the FLSA and the effective date for the imposition of liquidated damages under Maryland law. (*Id.*; Mem. 27-30, Nov. 6, 2017, ECF No. 98.)

Not long after the Court rendered this ruling, the parties jointly moved for Court approval of a consent judgment of $31,712 against both Defendants, and the motion was granted. (ECF Nos. 106, 108.) The judgment order further provided, "Pursuant to Local Rule 109.2, Plaintiff's counsel shall file a motion requesting an award of attorneys' fees within fourteen (14) days of the entry of judgment." (Order, Feb. 23, 2018.) That motion was duly filed (ECF No. 109), opposed (ECF No. 113, 128), and made the subject of a reply (ECF No. 129). Defendants also filed a motion for leave to file a surreply (ECF No. 133), to which Plaintiff filed a response indicating he did not object to the surreply (ECF No. 145); Plaintiff included in that response an erratum pertaining to fees sought for preparation of the reply (*id.*). All of that briefing was completed by May 15, 2018.

On May 18, 2018, a suggestion of bankruptcy as to Hamilton was docketed. (ECF No. 149, amended by ECF No. 150.) In response, the Court stayed the case. (Order, May 24, 2018, ECF No. 153.) On June 5, 2018, Plaintiff filed a motion for clarification or reconsideration of the Court's order staying the case. (Mot. Clarif., ECF No. 155.) Plaintiff indicated he only wanted clarification of whether the stay applied to postjudgment enforcement proceedings against Canton's Pearls, which had not filed for bankruptcy. (Mot. Clarif. 2.) He stated, "The issue of attorney fees and costs can wait for the outcome of Hamilton's bankruptcy filing," noting "the assets of the corporate debtor are admittedly limited." (*Id.* & n.2.) However, in a July 19, 2018, letter to the Court, Plaintiff amended his motion by requesting the Court resolve the motion for attorneys' fees only as to Canton's Pearls. (ECF No. 158.)

The Court granted Plaintiff's motion, clarifying that proceedings in the case were stayed only as to Defendant Hamilton and that Plaintiff was free to pursue postjudgment enforcement actions against Canton's Pearls. (Mem & Order 2, Aug. 31, 2018, ECF No. 159.) Even so, the

Court denied without prejudice Plaintiff's motion for attorneys' fees and costs because resolving it at that point in time would be an inefficient use of the Court's time and resources since the "individual and corporate defendants in this case are intimately linked and it makes little sense to resolve Plaintiff's Motion against them in a piecemeal fashion." (*Id.*) The Court further observed,

> Moreover, as evidenced by the numerous post-judgment motions and requests for hearings filed by the parties in the last few months, the resolution of Plaintiff's Motion for Attorneys' Fees is far from straightforward. Indeed, despite the relatively small dollar value at issue in this case it has dragged on for over two years with both sides engaging in arguably vexatious tactics at times. It would be anything but an efficient use of the Court's time to engage in a lengthy analysis of Plaintiff's Motion and the propriety of the time spent on this case by Plaintiff's counsel only to have the Court's conclusion be rendered effectively meaningless in light of the Bankruptcy Court's resolution of Mr. Hamilton's petition.

(*Id.* 2-3.) In view of the Court's disposition of the motion for fees and costs, Defendants' motion for leave to file a surreply was found moot. (*Id.* 3.)

Now pending before the Court is Plaintiff's Motion Requesting a Ruling on Motion for Attorneys' Fees and Costs due to Bankruptcy Court Order Lifting the Automatic Stay (ECF No. 160) and Defendants' Motion for Leave to File a Surreply in Further Support of Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 163). The Court construes Plaintiff's motion as requesting a renewal of his earlier motion for fees and costs and grants it. Consequently, the Court now considers the motion for fees and costs (ECF No. 109) as pending, as well as Defendants' opposition to it (ECF Nos. 113, 128), and Plaintiff's reply (ECF No. 129). Despite Plaintiff's earlier lack of objection to Defendants' request to file a surreply, Plaintiff has now chosen to oppose it. (ECF No. 164.) The Court's finds Plaintiff's opposition to be without merit. Plaintiff's reply injected new material into the issue of his motion for fees and costs, and it is appropriate for Defendants to have a chance to respond to it. Defendants'

motion will be granted, and the Clerk will be directed to docket ECF No. 133-1 as Defendants' surreply. Included in his opposition to Defendants' motion is Plaintiff's request to supplement his motion "to include the hundreds of hours attorney time and expenses expended in pursuing his claims in bankruptcy court before providing Defendants further opportunity to respond" (Pl.'s Opp'n to Defs.' Mot. Renew 2); that request is denied. Plaintiff's motion for fees and costs will be considered on an as-is basis.

## II. Analysis

Under the FLSA, if an employer is found to be in violation of provisions pertaining to unpaid minimum wages or unpaid overtime compensation, then "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, the award of reasonable attorney's fees and costs is mandatory in a case such as this in which the Court has found the Defendants liable for their violation of FLSA provisions regarding minimum and overtime wages. Plaintiff's request is made pursuant to the FLSA, 29 U.S.C. § 216(b), the MWHL, Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(iii), Federal Rule of Civil Procedure 54(d)(2)(A), and this Court's Local Rule 109.2.[1]

Plaintiff seeks an award of $189,560 for attorneys' fees and $10,560 for costs. (Pl.'s Mot. Att'ys' Fees 18, Pl.'s Reply 20.) Although Plaintiff is certainly entitled to an award, the Court does not find his request to be reasonable. A lesser award will be made.

The amount of attorneys' fees to be awarded is within this Court's "sound discretion." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). To determine a reasonable award, the Court

---

[1] Plaintiff disclaimed any intent to seek treble damages for an alleged violation of the MWPCL, and apparently attorneys' fees for the same, saying "no specific or added work was spent with respect to this claim." (Pl.'s Mot. Att'ys' Fees 8 n.6.)

must calculate the lodestar, defined as "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  When analyzing the reasonableness of the number of hours claimed in a fee petition, the Supreme Court has observed,

> The district court . . . should exclude from this initial fee calculation hours that were not "reasonably expended."  Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Supreme Court has said that an attorney's fee is reasonable if it is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).  Calculation of the lodestar "yields a fee that is presumptively sufficient to achieve this objective." *Id.*

The Fourth Circuit has indicated that courts should also use the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), in determining a reasonable fee.  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009).  But the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989), cautioned that, although "[t]he *Johnson* factors may be relevant in adjusting the lodestar amount, . . . no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation."  More recently, the Supreme Court's opinion in *Perdue* cast doubt on use of the *Johnson* factors, *see* 559 U.S. at 550-52, and since then, the Fourth Circuit has suggested courts should utilize the *Johnson* factors simply to "inform" or

5

"adjust" the lodestar number, *see McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013). Moreover, a court should never separately use any *Johnson* factor that is already incorporated into the lodestar analysis, *id.*; and as the *Perdue* Court emphasized, "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." 559 U.S. at 553 (internal quotation marks omitted). Thus, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554.

*Perdue* stated that a court's first task in determining the lodestar is to "look[] to 'the prevailing market rates in the relevant community.'" *Id.* at 551. In this case, Plaintiff was represented by two attorneys, Bradford W. Warbasse and Howard B. Hoffman. Warbasse and Hoffman have separate solo practices, but say they have worked successfully together in other FLSA cases in the District of Maryland. Both attorneys seek compensation at the rate of $400 per hour. They say they have been awarded that rate in other FLSA cases in this District, but they provide no information as to what they usually charge paying clients, *i.e.*, what their "market rate" is. They rely upon an affidavit from Sally Dworak-Fisher, Esq., who indicates she is an attorney at the Public Justice Center ("PJC"), a nonprofit legal organization in Maryland, and is Lead Attorney of the Workplace Justice Project of the PJC, which represents workers seeking to recover minimum and overtime wages. (Pl.'s Mot. Fees, Ex. 3, ECF No. 109-5.) Dworak-Fisher also says she "regularly receive[s] attorney's fees at the customary market rates," but she does not say what those customary market rates are, other than to say, "This Court recently found my rate of $395 per hour to be reasonable" (citing *Smith v. Touching Angels Healthcare, Inc.*, Civ. No. RDB-17-673 at ECF No. 22 (Feb. 23, 2018)).

6

Because Plaintiff provides no information about prevailing market rates in the relevant community, which, for this case, the Court will define as the metropolitan Baltimore area, the Court turns to its Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (D. Md. 2018) ("Fee Guidelines"), for guidance. The Fee Guidelines state that they "apply to cases in which a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys' fees based on a set of criteria including hours and rates." Fee Guidelines p. 122, n.*. When this case began in March 2016, the Fee Guidelines established the following ranges for attorney's fees:

    a. Lawyers admitted to the bar for less than five (5) years: $150-225.

    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.

    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.

    d. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.

    e. Lawyers admitted to the bar for twenty (20) years or more: $300-475.

    f. Paralegals and law clerks: $95-150.

Those rates remain the applicable rates as this memorandum and order is written, and no information has been provided to the Court to indicate they are no longer valid. Thus, Warbasse, who was admitted to the bar in 1985 and who in 2016 had been admitted for 31 years, is reasonably able to claim an hourly rate of $400. However, at the time this case was filed in March 2016, Hoffman, who was first admitted to the bar in December 1999, had only been admitted to the bar for sixteen years, and he was not yet in the middle of his applicable range: $275-$425. Appropriately, then, he will be compensated at the rate of $325 per hour.

A more difficult part of the Court's analysis is determining a reasonable number of hours that may be attributable to Warbasse and Hoffman for necessary work on the case. Warbasse has

7

claimed compensation for 139.5 hours; Hoffman seeks compensation for 334.4 hours, including preparation of a reply brief on the fee petition. Thus, the total hours claimed are 473.9. While Warbasse has not claimed some of his hours as compensable, he still could have exercised additional billing judgment as he no doubt would have if Plaintiff had been billed directly for his fees. Hoffman appears to have claimed every conceivable tenth of an hour and exercised no billing judgment. The total number of hours claimed by the two attorneys is excessive and reflects Plaintiff's pursuit of unsuccessful motions, duplication of time for Warbasse and Hoffman, and unnecessary litigation practices such as filing motions on issues that could have been resolved with minimal effort and counting attorney hours for matters that could have been more appropriately handled by a paralegal or law clerk, as well as counting attorney hours for tasks that were purely clerical or administrative in nature and not, therefore, compensable. The Court's overall impression is that this case could have achieved its goal—proper compensation of Plaintiff—through much less lawyering, or overlawyering, as it were, by Plaintiff's counsel. As noted earlier, both sides engaged in arguably vexatious tactics, and an award of attorneys' fees should not reward such tactics.

Defendants have challenged the number of hours asserted by Plaintiff to be compensable, arguing some of the same foregoing points noted by the Court. They also contend that the attorney billing records "fail to include sufficient description to provide the Court with an understanding of the task." (Defs.' Opp'n 2.) Some of the billing entries are indeed vague. The Court now turns to the billing records to determine a reasonable number of allowable hours.

Warbasse and Hoffman have submitted their billing records in the format required by the Fee Guidelines, grouping hours according to the appropriate phase of the proceedings: case development, background investigation, and case administration; pleadings; written discovery;

depositions; motions practice; attendance at court hearings; trial preparation and post-trial motions; attendance at trial; ADR; and preparation of a fee petition.   Fee Guidelines 1.b. However, the Court observes that the same event is sometimes recorded by the two attorneys under different phases, which makes analysis of their billing records more difficult.   For example, Warbasse recorded time spent October 3, 2016, on review of Defendant's expert report and teleconference with Hoffman regarding the same under the phase of case development, background investigation, and case administration, while Hoffman recorded the same event under the phase of written discovery.  Other instances are noted by the Court and are the reason the Court's review of Warbasse's and Hoffman's billing records cannot proceed phase by phase.

As a result, the Court will turn to recurring deficiencies in the records and make appropriate adjustments across phases. Starting with the smallest adjustment, time is subtracted for an unjustified claim by Warbasse for travel pertaining to a deposition. He fails to show in his billing records the amount of time specifically devoted to travel exclusive of the conduct of the deposition, as well as starting point and destination.  Defendants note Warbasse has claimed 3.8 hours in relation to the deposition of Dr. Earl Hamilton on May 1, 2017, but the deposition itself took only one hour and twenty-six minutes, and the billing entry provides no information as to necessary travel; however, the invoice indicates Warbasse only had to travel between his office in Towson, Maryland, and the deposition location in downtown Baltimore (Pl.'s Reply, Ex. 5, Invoice M-128606), a distance of approximately thirteen miles and travel time of approximately thirty minutes, according to Google™ Maps.  Consequently, the Court subtracts one hour for failure to document the travel time.

Additionally, the Court reduces Warbasse's hours by 1.5 hours and Hoffman's by 4.4 hours because they reflect time spent in clerical or administrative tasks such as electronic

filing, mailing, or scheduling. Next, Hoffman's hours are reduced by 14.9 hours, which represents duplication of time by Hoffman and Warbasse in teleconferences with each other (besides those clearly discernible as devoted to division of labor or case strategy) as well as teleconferences with opposing counsel and teleconferences and hearings with the Court where the presence of both was unjustified. Next, Warbasse's hours are reduced by 3.4 hours and Hoffman's by 6.6 hours, which were claimed by the attorneys for drafting experts' reports when such reports should have been drafted by the experts and only reviewed and lightly edited by attorneys.

Several of Plaintiff's motions were either unnecessary to achieve the consent judgment or unsuccessful or both. These include his motion for leave to reopen 30(b)(6) deposition (ECF No. 14), a motion to deem admitted an unanswered second set of requests for admission (ECF No. 22), a motion for sanctions (ECF No. 24), a motion to compel and for sanctions (ECF No. 37), another motion to compel (ECF No. 45), a motion to exclude Defendants' supplemental expert report (ECF No. 66), a motion appealing the magistrate judge's ruling denying Plaintiff's motion for exclusion of Defendants' supplemental expert report (ECF No. 85), and a motion *in limine* to exclude Defendants' expert testimony (ECF No. 93). Although the Court will not exclude all time devoted to these motions, it will subtract some hours in recognition of the Court's judgment that the motions generally went well beyond what was necessary to advance Plaintiff's case. In short, they were overblown and often included unnecessary, vexatious remarks about Defendants and Defendants' counsel, faults that permeated other filings as well. Thus, the Court will subtract 10 hours from Warbasse's total claimed hours and 96 hours from Hoffman's total claimed hours.

An additional 3.7 hours of Warbasse's hours and an additional .6 hour of Hoffman's hours are subtracted from their totals because they reflect time spent producing noticeably deficient discovery responses.

A significant number of hours was billed by the attorneys at their hourly rates when they should have been billed at the hourly rate of $95 based on the appropriateness of employing either a paralegal or law clerk for such tasks as drafting pleadings and discovery requests and responses from templates, undertaking legal research, drafting portions of substantive motions, drafting motions for extension of time, preparing exhibits, drafting notices of depositions and subpoenas, drafting deposition outlines and digests, forwarding discovery productions to opposing counsel, drafting lodestar statements, drafting affidavits, and formatting billing records in the manner required by Local Rule 109.2. Of course, attorneys are expected to review and edit what paralegals and law clerks produce, but considerable attorney time, and money, can be saved by employing the services of lesser-paid professionals. As a result, the Court subtracts 14.1 hours from Warbasse's total and 49.2 hours from Hoffman's total. These hours will be compensated at the hourly rate of $95 according to the Fee Guidelines.

Finally, the Court must step in and exercise billing judgment to subtract excessive hours. This results in Warbasse being compensated for 90.4 hours at $400 per hour ($36,160) and Hoffman being compensated for 115.9 hours at $325 per hour ($37,667.50). In addition, Warbasse will be compensated for 14.1 hours at the rate of $95 per hour ($1,339.50), and Hoffman will be compensated for 49.2 hours at the rate of $95 per hour ($4,674). Together, these amounts total $79,841 and comprise the lodestar. The Court has reviewed Plaintiff's fee petition, but finds it unpersuasive in indicating the lodestar should be higher. This case simply does not present the "rare circumstances in which the lodestar does not adequately take into

11

account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. Instead, the lodestar properly accounts for the time reasonably spent in achieving Plaintiff's consent judgment of $31,712.

Plaintiff revised his requests for costs from $11,763.42, as set forth in his fee petition (Pl.'s Mot. Att'ys' Fees 16), to $10,560. (*See* Pl.'s Reply 19.) Plaintiff claims a total of $4,760.60[2] in deposition costs, expert witness costs of $5,066.25, and $733.75 in incidental expenses such as filing fee, service fee, postage, mileage, and parking. (Pl.'s Mot. Att'ys' Fees, Ex. 4; Pl.'s Reply, Warbasse Decl., ECF No. 129-5.) Plaintiff's original motion had no supporting documentation in the form of invoices or cancelled checks to support his claim for costs. In the reply, Plaintiff has supplied invoices for the above-stated figure of deposition costs, but deficiencies are found in those.

Plaintiff has claimed a $150 cancellation fee for a deposition of Timothy Mitchell, but Defendants have supplied proof they paid the reporting service for that. (Defs.' Surreply, Ex. 4.) In addition, Plaintiff claims $1,502.70 for the videotaped deposition of Defendants' expert, Anthony Pelura. One problem with that claim is that Plaintiff has supplied only one invoice for Pelura's deposition in the amount of $745 for videography and nothing for the balance. Further, Plaintiff has not provided reasonable justification for billing the cost of a videotaped deposition when a conventional one would do. Plaintiff states in his fee petition, "Counsel for the Plaintiff videotaped Pelura's testimony because we wanted to capture Pelura in a lie about his background—which we did. The issue was not addressed in the Motion to Exclude and purposefully left for Trial where the videotape of Pelura's self-assured demeanor would have been used to cross examine him." (Pl.'s Mot. Att'ys' Fees 7 n.7.) A witness can be easily impeached from a typed transcript about an inconsistent statement as to his background. The

---

[2] A mathematical error resulted in the figure of $4,760.*06* being claimed in Plaintiff's reply.

videography is icing on the cake that will not be charged to Defendants. Moreover, failure to provide supporting documentation for the conventional deposition results in no reimbursement for Pelura's deposition. Consequently, Plaintiff will be awarded $3,107.90 in deposition costs.

As for expert witness fees, the claimed amount of $5,066.25 is supported adequately by either invoices or cancelled checks. No supporting documentation is provided for $733.75 in incidental expenses, but the Court has examined the entries relating to those and does not question them. Thus, the Court will award total costs of $8,907.90.

### III. Conclusion

Plaintiff's motion for attorneys' fees and costs will be granted, and Plaintiff will be awarded $88,748.90, comprised of $79,841 in attorneys' fees and $8,907.90 in costs. In accordance with the foregoing analysis, the Court hereby ORDERS:

1. Plaintiff's motion for attorneys' fees and costs (ECF No. 109) is GRANTED.

2. Defendants' motion for leave to file surreply (ECF No. 133) is GRANTED. The Clerk shall DOCKET ECF No. 133-1 as Defendants' Surreply.

3. Plaintiff's motion requesting ruling on fee petition (ECF No. 160) is GRANTED.

4. Defendants' motion to renew Defendants' motion for leave to file surreply (ECF No. 163) is GRANTED.

5. Plaintiff is awarded $88,748.90, which is comprised of $79,841 in attorneys' fees and $8,907.90 in costs. The award of attorneys' fees consists of $37,499.50 for Attorney Warbasse and $42,341.50 for Attorney Hoffman.

6. Defendants are jointly and severally liable for this award.

7. The Judgment (ECF No. 108) is AMENDED to incorporate this award.

DATED this ___11___ day of March, 2019.

BY THE COURT:

_____

James K. Bredar
Chief Judge